STATE, EX REL. F. C. BROCKETT ET AL., V. CITY OF ALLIANCE ET AL.

FILED JULY 10, 1902. NO. 12,742.

1. **Liquors:** LICENSE: CITY: COUNCIL: GRANT: ISSUANCE: ADJOURNED MEETING: REVOCATION: QUÆRE. Whether a city council which has by order granted a license to an applicant to sell intoxicating liquors, no formal license having been issued, can at an adjourned meeting some two weeks later reconsider their action granting such license and reject the application, without notice to the applicant, *quære*.

State v. City of Alliance.

2. **License: REFUSAL: DISCRETION.** It is within the absolute discretion of the licensing authorities to refuse a license to all applicants therefor in any county or municipality of the state.

3. **Liquor Traffic: LICENSE: REGULATION: QUASI-JUDICIAL CAPACITY: APPEAL.** Where the traffic is licensed and regulated in pursuance of the law regulating the sale of intoxicating liquors, and ordinances of the municipalities of the state, those authorized to grant a license to such as apply therefor, in passing on an application, act in a *quasi*-judicial capacity; and from the action taken thereon an appeal lies to the district court by any party interested in such application.

4. **Licensing Authorities: LEGAL DISCRETION: ARBITRARY ACTION.** Such licensing authorities, in passing on applications for license, can exercise only a legal discretion, and have not a right to exercise arbitrary and capricious discretionary power regarding such application.

5. **Writ of Mandamus.** *Held*, in the case at bar, that the relators are entitled to a writ of mandamus to correct an abuse of arbitrary exercise of authority.

ERROR from the district court for Box Butte county. Tried below before WESTOVER, J. *Reversed.*

*William Mitchell, R. C. Noleman, Thomas J. Doyle, George W. Berge* and *Wright & Stout,* for plaintiffs in error.

*R. C. Noleman, William Mitchell* and *Doyle & Berge:*

Two distinct legal questions are presented by this record:

1st. Under the Ames Law, can a board authorized to grant license, after having declared itself in favor of license, and having granted license to certain licensees, arbitrarily refuse license to other applicants, who have strictly complied with the requirements of the law, and entitled to license save for the caprice of the board?

2d. Can a licensing board, after having granted a license and having directed the same to issue, and having approved the bond, and having accepted the license money, and after the licensee, upon the strength of these several acts of the board, has purchased a stock of liquors and other things necessary to conduct the traffic, arbitrarily

cancel the order granting the license, at an adjourned meeting, after an interval of a fortnight, without the knowledge of the licensee and without notice to him?

The first question should be answered in the negative and we cite *Ex parte Levy*, 43 Ark., 42, in support of our position.

Under the second head, it is not necessary to cite authority. The licensee had acquired a vested right, of which he could only be deprived by his own wrongful act.

*Carl C. Wright* and *John F. Stout:*

When this grant of power was made by the council, and the city by its authorities received the money, the grant was complete, and it could only be taken away in a method provided by statute, which clearly provides that the license shall be revoked or annulled only upon notice to the party holding the same. True, the license is not strictly a contract; and it may not be a property right; but it is a privilege which, once granted, can not be taken away without a hearing. This is clearly recognized in the statute which gives the board a right to revoke the permit to a druggist, which is not paid for as a license, at any time— without notice; but a distinction is made in case of a license for which a fee is paid.

In the case of *Martin v. State,* 23 Nebr., 371, the court in the majority opinion held that a license might be revoked after a conviction in the justice or police court without further notice to the licensee, but that was upon the theory that in the trial and conviction the licensee had had an opportunity to be heard, and because the judgment of conviction was binding upon him. The reasoning of Justice MAXWELL, however, in his dissenting opinion, is much more consonant with established principles of law. Both the majority and the dissenting opinions recognize the fact that when the grant has once been made of the privilege to sell intoxicating liquors, it is a right of such character that the law recognizes that it shall not be revoked except for cause upon a hearing. It is claimed,

however, that since the action of the council granting the license was reconsidered at an adjourned meeting, that it was within the power of the council to control its own acts until the adjournment *sine die* of the session. There is no question but that a city council may reconsider and change its action at an adjourned meeting the same as though done at the meeting at which action is first taken. There is also no question that in case no rights of third parties have intervened that the council may at any time undo what it has done. The question in this case, however, is entirely different. The council's action in the matter was complete. It had done all it had to do. It had granted the license and ordered it issued. The city by its other authorities had acted upon this order and received the money for the license. After this had been done the licensees had invested large sums of money in reliance upon the action of the council. Their right under the grant of the council had become complete and in reliance thereon they had been put in such a situation that it is impossible for the council to put them in *statu quo*.

*W. G. Simonson, Michael F. Harrington* and *Nathan K. Griggs*, for defendants in error.

*Simonson* filed no brief.

*Harrington* and *Griggs* argued orally that an adjourned meeting of the board was a part of the original sitting; that it was the duty of the licensee to take cognizance of all adjournments without further notice; that, the two meetings—the original sitting and the session on adjournment—being an entirety, it was in the power of the board to undo that act in their *quasi*-judicial capacity. They were in this respect like a district court. The same argument might be made for a litigant before a district court that had been made for this licensee. Suppose a session of the district court for Box Butte county is called for the month of January, 1902; and at that time a decree is entered fixing the title to certain real

property in it. The term is adjourned till July; and, in the meantime, A places thousands of dollars of improvements upon the real estate, will those improvements oust the court of jurisdiction to set aside its decree? The licensee in this case may be able to recover his license money. We are not, however, trying an action for money had and received or a suit in equity. It is simply the right of the board to revoke this license.

HOLCOMB, J.

The relators prosecute error proceedings from an order of the district court for Box Butte county denying their applications for peremptory writs of mandamus against the respondents, and dismissing at their cost the three several actions brought for the purpose of obtaining such writs. By agreement of all parties in interest, the three several actions were consolidated and prosented as one suit, the law and the facts being equally applicable to each, and the writs prayed for being identical, save as to the names of the relators; and the right to have the writs issued is based substantially on the same grounds in each application. The facts are all agreed to and stipulated in the record. The questions involved and presented to us for consideration are purely matters of law. The subject of the controversy is in respect of the granting of licenses to the relators by the municipal authorities of the city of Alliance, a city of less than 5,000 inhabitants, to sell intoxicating liquors therein for the current fiscal year. The case presents a twofold aspect, one of which is whether, when a city council has granted a license to sell intoxicating liquors, after full and due compliance with all of the requirements of chapter 50 of the Compiled Statutes regulating the sale of intoxicating liquors and the ordinances of the city regulating the granting of licenses, the city council may, at an adjourned sitting, some two weeks later, without notice to the applicants and without giving any reason therefor, rescind and revoke its previous order granting such licenses, and reject the application.

The other question is whether, when the city council has enacted an ordinance for licensing and regulating the sale of intoxicating liquors within the corporate limits of the municipality, and is granting licenses to different applicants, it may arbitrarily and capriciously, through mere whim, favoritism, or prejudice, and without reason or cause, discriminate against an applicant in every way admittedly qualified, and who has complied with all the requirements of law and the ordinances of the city, and against whom no objections, remonstrances or protests are presented, and refuse to grant to such applicant a license, while granting the same to others. It is argued with a degree of plausibility, and with citations of authorities of respectability in support of the position, that whether a license shall be granted to any individual rests in the discretion of the licensing authorities, and that such discretion is absolute, unlimited and beyond the control of any other power.

It appears from the stipulated facts in the case at bar that on May 6 the city council, after full compliance with all the requirements of the law on the part of the relators, entered an order granting licenses to them on their several applications, and also to three others residing in the city who were desirous of engaging in the same business. The licenses were granted after hearing, and in pursuance of an ordinance of the city duly enacted for such purpose. The city council then adjourned its meeting until the 20th of the same month. The mayor, whose duty it was, with the city clerk, to sign the licenses so granted to relators by the city council, refused to sign the same, and no formal licenses were issued. On May 20, at the adjourned meeting of the city council a motion was made to reconsider and rescind the action taken on May 6 in granting licenses to the relators; two members voting in favor, and one against the motion, which was declared adopted. The city council was at the time composed of four members, and the mayor as an ex-officio member; one of the councilmen being absent. No reason is assigned for the city

41

council's action last taken, and none appears to exist. The action was manifestly the result of an arbitrary exercise of power by the members of the city council, who favored the motion to reconsider, so as to deprive the relators of the privilege of engaging in the business, not because there was any objection which would not apply equally to the others who had been granted a license, but from motives undisclosed; it being contended that no reason of a substantial character was required to be assigned as a basis for the action taken. It is admitted that the relators had expended large sums of money in buying stocks of liquors and preparing to engage in the business, relying on the faith of the order of the city council of May 6 granting them licenses on their application to engage in such business. It is argued that because the meeting of the city council of May 20th was in pursuance of an adjournment of the meeting of May 6th, and no formal license had issued, the city council might properly reconsider its former action, and reject the several applications of the relators. The council could, we think, reconsider and revoke its action taken prior thereto at the same meeting, where no rights have attached, and the action taken which is sought to be reconsidered has not been acted on. Dillon, Municipal Corporations [3d ed.], sec. 290, and authorities cited. The relators were not authorized to engage in the business until licenses were issued. The money paid as license fees did not belong to the city before the licenses were issued, and to that time was subject to the order of the relators. *State v. City of Lincoln*, 6 Nebr., 12. Without, however, passing directly on the question first called to our attention, we pass to the second, which, in our view of the case, must finally dispose of the rights of the litigants in the present proceeding, as presented to us by the record.

This phase of the litigation is fairly presented by the issues, has been exhaustively argued by counsel, and its determination appears essential to a proper disposition of the case. It is quite important to know and determine

whether or not, in granting a license to sell intoxicating liquors under the law of this state, the licensing authorities after they have determined to grant licenses in a particular locality or municipality have an uncontrolled and unlimited discretion, without reason or cause for the basis of the action taken, to arbitrarily grant a license to one individual and refuse to another equally well qualified, or whether the discretion reposed in them is a limited one, and must be exercised on some rational ground, as distinguished from mere caprice.  In the case at bar no reason is given for the action taken by the city council in reconsidering its prior action granting the relators license to engage in the liquor traffic, and, by the stipulation of facts, no reason of a substantial character did exist as a cause for the action taken.  If the discretion thus exercised is an unlimited one, then, so far as the present phase of the case is concerned, the relators are without remedy, and the action so taken is final.  It is the settled law of this state, as well as in many other jurisdictions, that whether the traffic in intoxicating liquors shall be licensed by the licensing authorities of a political subdivision of the state, or the municipalities thereof, rests absolutely and entirely in the discretion of such bodies, and in the exercise of such discretionary power there is no control or limitation by any other power.  *State v. Cass County,* 12 Nebr., 54.  But may it be said that a licensing board has the same absolute discretionary power to grant to one a license, and refuse another?

Will the statute regulating the sale of intoxicating liquors in this state bear the construction that after the authorities have determined to authorize the sale of intoxicating liquors under the regulations provided for by law, they may, arbitrarily and without any reason therefor, grant a license to whomsoever they choose, who have complied with the law, and refuse it to whomsoever they may say it does not please them to have the applicant engaged in the traffic?  Can they grant a license to a favorite individual,—give him the exclusive privilege to engage in the traffic,—and refuse a license to all others?

It is provided by section 1 of chapter 50, that first there shall be a petition setting forth the character of the applicant, where the proposed sale is to take place, and other formalities, and the number of freeholders which is required in order to make a valid petition. By section 2 public notice of the hearing of the petition is provided for, and when all of the essential prerequisites have been complied with, a license may be granted. By section 25 it is provided that the corporate authorities of all cities and villages shall have power to license, regulate and prohibit the giving away and sale of intoxicating liquors in such cities or villages; such corporate authorities to comply with and be governed by all of the provisions of chapter 50 in regard to the granting of license. By subdivision 9, section 69, article 1, chapter 14, it is provided that cities of the second class of less than 5,000 shall have power by ordinance to license, regulate and prohibit the selling or giving away of intoxicating liquors within such city; the license not to extend beyond the municipal year in which it is granted, and such corporate authorities to comply with the general laws of the state relative to the sale of intoxicating liquors. By section 4 of chapter 50 it is provided that on the hearing of any case arising under the provisions of sections 2 and 3, compulsory process for the attendance of witnesses may be had, the testimony on the hearing reduced to writing; and, if any party feels himself aggrieved by the decision made in the case, he may appeal to the district court, and such appeal be decided by the judge of such court. It is logically deducible from the foregoing that the legislative intendment relative to the sale of intoxicating liquors in this state is that the traffic is prohibited except where the privilege to engage in it is granted by the local authorities; that whether the traffic shall be licensed in any particular county or municipality rests exclusively with the body empowered to grant a license, and their discretion in refusing to grant a license to engage in the traffic can in nowise be interfered with; that, where the traffic is licensed, whether or no a license

shall be granted to any individual rests in the discretion of the licensing power, to be determined on the application of the party desiring a license, after a hearing,—such discretion to be exercised in a *quasi*-judicial capacity; that when action is taken on any application for a license, any party interested may appeal from such action to the district court, and there have the cause reviewed, and the question determined as to whether or not, under the evidence in that particular case, the applicant is entitled, under the law, to have a license granted him. The views just expressed are fully sanctioned by the prior utterances of this court in the case of *Waugh v. Graham*, 47 Nebr., 153, 160, where Mr. Justice HARRISON quotes approvingly the utterances of the trial court in its findings, as follows: "The evident meaning of the language used * * * was that in the matter of the hearing on the application for a liquor license the excise board did not act ministerially, but judicially, and after listening to the evidence, exercised their discretion or judgment in determining whether, in view of all the facts and circumstances, a license should be granted or refused, and that if the appellate or district court, after scanning all the same testimony, reached a different conclusion on any vital point involved, the decision of the excise board must be reversed as a wrong exercise of the right to decide, of the discretion vested in it, or if the court's conclusions agreed with those of the board, its judgment must also agree." Continuing, says the author of the opinion: "It is clear that the licensing body is vested with discretionary power; that its action is judicial and not merely ministerial. 'In far the greater number of states the doctrine is now well settled that the court or board charged with the duty of issuing licenses is vested with a sound judicial discretion, to be exercised in view of all the facts and circumstances in each particular case as to granting or refusing the license applied for. The principle is that the licensing authorities act judicially, and not merely in a ministerial capacity. In determining the nature as well as the existence of this discretion much

will depend upon the language of the local statute, and this, of course, should be carefully scrutinized; but the general disposition, under all the diverse forms of statutory provisions, is to leave a wide margin of discretion to the court or board hearing the application,' "—citing Black, Intoxicating Liquors, p. 211, sec. 170; *State v. Cass County,* 12 Nebr., 54.

It would seem to be a vain and useless thing for the legislature to provide for an appeal from the action of the licensing board to the district court, and there have the case heard on appeal, and a proper judgment entered, if the discretion of the licensing body was unlimited, and to be exercised arbitrarily according to the uncontrolled will of that body. Nor do we think the different sections of the statute regarding the subject, when construed together, are susceptible of such a construction. If the licensing board acts *quasi*-judicially, as has been repeatedly held they do, it would seem there must be a rational basis for the action taken, and a reason given based upon the evidence or facts and circumstances of which the board may legally take cognizance, such as may be reviewed and considered by the appellate court in the determination of the correctness of the conclusion reached by such tribunal. While the authorities are not entirely harmonious on the subject, a careful consideration of many of them leads us to conclude that on principle there is not a great divergence of opinion; that almost all the decisions of the courts of last resort recognize the principle that whether the traffic shall be licensed in a particular political subdivision or municipality rests absolutely in the discretion of the licensing body, but where the traffic is sought to be controlled and regulated by licensing those engaged in it, the discretionary power to grant or refuse a license is a legal discretion having law and reason for its basis, and that arbitrary action may be controlled by the writ of mandamus. Says Black, Intoxicating Liquors, section 171, "The discretion to be exercised in granting or refusing licenses, is a sound judicial discretion, to be determined, in

its exercise, by the facts and circumstances of each case. It is not the arbitrary will of the judge; it must rest on reasons. It would be improper to grant a license to any applicant without investigating his qualifications. And it would be equally improper to refuse a license to any applicant from mere prejudice or caprice, or without any reason whatever. The limits of the discretion are marked out by the law, and to exceed them, on one side or the other, is an abuse of power." In *State v. Hanlon*, 24 Nebr., 608, 612, it is said: "The granting of a license under the provisions of law which we are now considering, is a matter of discretion on the part of the board controlling the municipal body in question; this discretion is not an arbitrary one, but is controlled by many and appropriate provisions of law. This discretionary power arises and becomes operative as to each particular case only, upon the applicant placing himself in the situation entitling him to consideration as an applicant for such favor." Under a general ordinance providing for the granting of licenses, such as has been passed by the authorities of the city of Alliance, which has been made a part of the record in this case, and the right of a city council acting under such ordinance to grant or refuse at will and arbitrarily a license to an applicant therefor, it is said by the appellate court of Illinois, in speaking of a similar case decided by the supreme court of that state: "The court held in substance that under a general ordinance of a city for licensing dramshops the city authorities had no right to make an arbitrary discrimination in granting license. They can not grant the same to a favored few and refuse it to another who has in all respects complied with the ordinance and laws of the state, who is admitted to be a suitable person for the transaction of such business. Municipal corporations are mere creatures of the legislative will and can exercise no powers, except such as the state has conferred upon them. All powers they possess are held by them in trust for the people of the municipality and the people generally." *Zanone v. Mound City*, 11 Brad., 338. Under statutory

provisions in substance quite analogous to our own, it is held by the supreme court of Arkansas in the case of *Ex parte Levy,* 43 Ark., 42: "The county court has the discretion to grant or entirely refuse license to sell liquor at all, in township or city wards, where the county and township, or ward, have voted for license; but if it license some it can not arbitrarily refuse other applicants in the same township or ward who are of good moral character and comply with the requirements of the statute; and when some are refused, the court should give its reasons, so that an appellate court may see whether a sound legal discretion has been exercised." In the opinion, after reviewing the different authorities, it is said: "Upon a review of all the conflicting and modified views, which have been expressed by the courts, a majority of the court determine: That any construction of law which gives to the county court the power, arbitrarily to grant licenses to some individuals, and refuse them to others in the same township or ward, equally as competent and as worthy, and without any cause assigned, is contrary to the spirit of our government and in hostility to the declarations of our Bill of Rights, and a misapprehension of legislative intent. We think the discretion of the county court extends to determining whether or not any license at all shall be issued in any particular township or ward, after that discretion may have been conferred by the vote of said township or ward, and by the vote of the county. But, having adopted the policy by issuing any license, it has no further discretion in a particular case, than to determine whether the applicant has complied with all the requirements of the law, and is of good moral character, and, we think, upon refusal, the grounds of the objection should be shown, that it may be seen whether or not the court has exercised a sound legal discretion in the matter." To the same effect may be cited *Sherlock v. Stuart,* 96 Mich., 193; *Petition of Raudenbusch,* 120 Pa. St., 328; *In re Sandcroft's License,* 168 Pa. St., 45; *Brock v. State,* 65 Ga., 437. In discussing the question of what is a discretionary power, and the

meaning of the term when granted by law, either expressly or impliedly in connection with the exercise of official duty, is is said by the supreme court of the District of Columbia: "The meaning of the term discretionary * * is that the discretionary decision shall be the outcome of examination and consideration; in other words, that it shall constitute the discharge of official duty and not a mere expression of personal will—thus, where discretionary power is granted to approve or disapprove a license, an arbitrary disapproval without an examination of relevant facts, and expressing nothing but the mood of the officer, would not be an exercise of discretionary power within the legal meaning of the term, and would expose him to the interference of the court by writ of mandamus." *United States v. Douglass,* 19 D. C., 99.

It is argued by respondents' counsel that because of the use of the words "may grant a license," in section 2 of the liquor act, it can not be construed as mandatory without doing violence to the general rule of construction, to the effect that the word "may" can be construed as mandatory only for the purpose of sustaining, preserving, or enforcing a right, but never to create one, and that it can not be said that the relators have a legal right to the licenses, which they are seeking to enforce. Without entering into a discussion of the technical rules determining when the word "may" should be construed as mandatory, we are satisfied that it was not the intention of the legislature to empower the municipal authorities of the state with an unrestrained discretion to discriminate, without cause or reason, between applicants for liquor licenses, granting to one and refusing to another capriciously and whimsically; but rather, it was the intention, that when it was determined to license the traffic, to determine the right of those applying to engage in the business under recognized rules and laws, and for causes and reasons applying to all alike, and in the exercise of a legal discretion, subject to review by appeal to the district court. The word "may," we apprehend, applies more directly to the right of the local

authorities to refuse a license altogether to all applicants, or, within the legal discretion of the licensing board, to grant to all those who bring themselves within the provisions of the law and the rules and ordinances enacted for the licensing and regulation of the traffic. We do not mean to say by this that every applicant without limit, who should prove himself qualified, should be granted a license, but that restrictions and regulations should be of general application, applying to all alike, and not such as could be used to deprive one of the privilege, and held for naught as to another.

It is also said, although not properly inferable from the record, that the action of the city council which is complained of may have been occasioned because of a desire to restrict the number of saloons and those who should be licensed to engage in the traffic, or prevent the selling of liquors at places applied for by the relators because deemed inexpedient and inimical to the interests of the city, and especially of the locality where it is proposed to engage in the business. This is mere speculation, and we are not at all warranted in arriving at any such conclusion, or to any other conclusion than that the action was purely arbitrary. The argument admits the correctness of the proposition of the relators wherein they contend that such action must have a reason for its basis, and that the discretionary power resting in the city council is not unlimited. The right to regulate the traffic through restrictions and regulations almost innumerable and inconceivable in variety is conceded. Such regulation, however, can not be the product of the ever-changing personal wishes and will of the city council, unenacted into ordinance or resolution, but locked in their breasts until needed to gratify some personal whim, and again hidden in the secrecy of their minds while others are granted the very privileges denied to those from whom it suited their pleasure to withhold. The power to regulate, says the statute, is by ordinance, which must be of general application, and bear alike upon all who are brought within the

scope of its provisions. Our attention is called to no ordinance, rule or regulation, nor to any reason of a substantial character, justifying the denial or cancelation of the license granted to the relators, and none are believed to exist. The action being purely arbitrary, and an abuse of the discretionary powers with which the city council is vested, mandamus may properly issue to correct such abuse. Two of the respondents, as members of the city council,—Louis Beuchsenstein and L. F. Smith,—have declined to join with the other respondents in resisting the writs the relators pray for, and none of the costs in the case should, in justice, be adjudged against them.

The relators are entitled to a peremptory writ as prayed, commanding the respondents the mayor and city council to rescind and revoke the motion passed at the meeting of May 20, wherein they attempted to reconsider the action taken on May 6 granting licenses to relators, and to reject their application for such licenses, and against the respondents the mayor and the city clerk, commanding them to issue to the relators licenses in pursuance of those granted at the meeting of the city council of May 6, for the remainder of the municipal year for which such licenses were granted; the costs of the action to be taxed against all of the respondents, save the two members of the city council heretofore mentioned.

It is possible that the relators have misconceived their remedy, by applying for a writ of mandamus, instead of appealing from the action of the city council in rejecting their several applications. Whether or not they have a plain, speedy and effective remedy in an action at law, by appeal, was not presented to or considered by the trial court, nor is the question argued here; hence we have neither considered nor determined the matter.

The order of the district court dismissing the several actions of relators applying for peremptory writs of mandamus is reversed, and a judgment will be entered in this court awarding the writ and costs in harmony with the views hereinbefore expressed.

JUDGMENT ACCORDINGLY.

NOTE.—In this and previous volumes, chapter 50, Compiled Statutes, has been termed the "Ames Law." It has been popularly termed the "Slocumb Law," for more than twenty years. The history of the 'law is as follows: By an act approved February 16, 1877, the governor of the state was authorized to appoint three suitable persons to revise the laws of the state. Samuel H. Calhoun, John H. Ames and Alexander H. Connor were so appointed. In the performance of such duties, John H. Ames drafted a law regulating the sale of intoxicating liquors. This failed of passage at the session of 1879. Charles B. Slocumb was elected to the house in 1881. Slocumb and Ames went over the law together, and made some revisions. As revised, the law was introduced by Slocumb and became chapter 50 aforesaid. In proof of these statements, I refer to internal evidence. Ames's law was drafted as a part of the proposed statutes. The term "this chapter" occurred in it repeatedly. Ames and Slocumb sought to substitute "this act," but sometimes they missed it. See section 20.—W. F. B.