COOK, COMMISSIONER OF REVENUES, *v.* GLAZER'S
WHOLESALE DRUG COMPANY OF ARKANSAS.

4-7761                                        189 S. W. 2d 897

COOK, COMMISSIONER OF REVENUES, *v.* LAWRENCE C.
AUTEN, JUDGE; No. 4-7746.
(Consolidated)

OTHO A. COOK, COMMISSIONER OF REVENUES, *v.* BOWLES,
MARKS, MEADOWS AND PRICE, Nos. 4-7784, 4-7785,
4-7786 and 4-7787.
Opinion delivered October 22, 1945.

Rehearing denied November 19, 1945.

190

*Herrn Northcutt,* in Glazer's cases, for appellant.

*R. S. Wilson* and *O. T. Ward,* in Bowles cases, for appellant.

*E. B. Dillon, Arthur L. Adams* and *Owens, Ehrman & McHaney,* for Glazer's-appellee.

*U. A. Gentry, Harrell Harper, Harvey G. Combs, Andrew Henry* and *D. K. Hawthorne,* for appellees Bowles, *et al.*

GRIFFIN SMITH, Chief Justice. The cases involve a construction of Act 108 of 1935, and question power of the Commissioner of Revenues to withhold or cancel liquor permits.

Glazer's Wholesale Drug Company of Arkansas procured a domestic charter December 20, 1944. Its right to conduct a wholesale liquor business was cancelled April 27, 1945. On appeal to Chancery Court the order of revocation was reversed.

Irrespective of the cancellation order, Glazer's permit expired by operation of law June 30th. The Company, having been informed that renewal would be denied, sought relief both at law and in equity. It procured from Pulaski Circuit Court, Second Division, a writ of certiorari; and that Court, upon hearing, directed that the permit be issued. The Commissioner has appealed. The Commissioner also appealed from the Chancery order reversing cancellation. In the meantime, Glazer's petitioned Pulaski Chancery Court for leave to appeal from the Commissioner's action in refusing to renew the permit. It also sought to enjoin the Commissioner from interfering with its business. The prayer was denied on the ground that at the time of hearing

the Circuit Court's jurisdiction had been invoked through the petition for certiorari.

The Commissioner has also appealed from four Circuit Court orders directing that permits be issued to retail liquor dealers whose rights expired June 30th. The cases were consolidated and are docketed as No. 7784, *Commissioner* v. *James Bowles*; No. 7785, *Commissioner* v. *A. M. Marks,* doing business as G & M Liquor Company; No. 7786, *Commissioner* v. *R. S. Meadows*; and No. 7787, *Commissioner* v. *E. A. Price.*

Numerous motions, petitions, and procedural transactions, both in Circuit and Chancery Court, are incidental to the final issues, which are:

(1) If a wholesale liquor dealer has been granted a permit to do business in Arkansas, and the Commissioner elects to revoke for cause, what course must the official pursue? (2) When the Commissioner's act of cancellation is tested in the Court having jurisdiction, what proof is required to sustain the Commissioner, and (a) must he state what the reasons are? (3) Do wholesalers and retailers occupy different positions regarding renewal of permits? (4) Does one holding a permit (either wholesale or retail), against whom no accusation of illegal conduct has been made, and who applies for renewal, occupy a preferential status in derogation of one who applies, but who has not formerly held such permit? (a) Stated differently, does the Commissioner's original act in granting a permit and good conduct of the permittee vest any property rights or superior equities that a court will enforce? (5) May the Commissioner's action in refusing to renew either a wholesale or retail permit be controlled by the judicial process?

*First.*—Section 13, art. III, of Act 108 of 1935 provides that permits *may* be revoked for cause. It then enumerates conditions under which they *must* be. Section 14, Article 3, of the Act, authorizes the Chancery Court for Pulaski County to "review" action of the Commissioner in case of revocation. The second sentence of the section tells how "an appeal" may be taken. Context of the

measure as a whole clearly discloses a legislative intent to distinguish between cancellation of a permit, and first issuance, or reissuance.

Before a permit can be revoked a reasonable cause must exist. This, seemingly, was thought to be appropriate because one who engages in the liquor business, either as a wholesaler or a retailer, has the State's assurance (subject to the General Assembly's power to change the law) that the authority to operate shall be coextensive with the permit; hence, the business will not be disturbed unless some conduct of the permit-holder absolves the State. We think the legislature's attempt to vest the Chancery Court with jurisdiction was not in excess of its power. *Blum* v. *Ford, Commissioner of Revenues*, 194 Ark. 393, 107 S. W. 2d 340. While the petition in that case asked for injunctive relief and the question of jurisdiction was not expressly raised, this Court apparently treated the issue as one properly triable by the Court wherein it originated. In the opinion there is the statement that "Act 108 . . . provided that the dealer may appeal to the Chancery Court, and that is what the appellant did in this case." It was then stated what the Court's duty was—that is, "to hear the evidence."

The "cause" for which a permit may be revoked at the Commissioner's discretion, as distinguished from the mandatory grounds set out in the Act, must be substantial and have some reasonable relation to the business and the public. This, of course, would exclude arbitrary, capricious, personal, or punitive conduct by the Commissioner. The privileges conditionally extended with the permit cannot be terminated nor abridged at the whim of an administrator who might conclude that his legal sovereignty was such that a merely fanciful cause would suffice. We do not, in the instant case, decide whether the Commissioner erred in issuing his order of April 27th. This is so because his refusal to renew the permit when it expired June 30th terminated the Company's rights. The issue raised in respect of attempted cancellation is not one for which the alleged wrong could

be compensated in damages. Under the Chancery Court decree Glazer's continued to operate during the full permit period; and, as a matter of fact, it is still operating under the Circuit Court's mandate. The questions might not be moot if we should adopt the Commissioner's assigned reason for not renewing the permit—that one whose rights have been cancelled for cause is not eligible to reconsideration for a period of two years. In that event we would determine whether the Chancery Court was correct in finding that no cause existed. Since it was not necessary for the Commissioner to assign a reason for refusing to renew, and since existing rights of Glazer's are referable to the Commissioner's refusal to renew as of July 1, it follows that the April 27th transaction has ceased to be important.

*Second.*—Chancery Court does not have jurisdiction to review the Commissioner's action in refusing to issue a permit in the first instance, or in declining to renew an existing permit. In a proper case relief would be available in Circuit Court through writ of certiorari directed to the Commissioner, commanding him to send up any existing records relating to the matters com- plained of. But inasmuch as reasons within the official knowledge of a Commissioner may exist, and there is no requirement that these reasons be assigned, certiorari would ordinarily be futile. Proof necessary to sustain the official act would be that the application or petition, or request for issuance or reissuance, had been brought to the Commissioner's attention, and that he had acted on it.

As to the retail trade a very broad discretion rests with the Commissioner. He is not required to write a brief in support of the action taken. The law presumes his understanding of the Alcoholic Control Act, its purpose, and its limitations. Section 1, Article III, declares it to be the State's policy that ". . . the number of permits . . . shall be restricted, and the Commissioner of Revenues is hereby empowered to determine whether public convenience and advantage will be promoted by issuing such permits, by increasing or decreas-

ing the number thereof; and in order to further carry out the policy hereinbefore declared the number of permits so issued shall be restricted: The Commissioner of Revenues is further given the discretion to determine the number of permits to be granted in each County of this State or within the corporate limits of any municipality; . . . to determine the location thereof, and the person or persons to whom they shall be issued."

Certainly this language does not indicate a purpose to subject the Commissioner to a judicial inquest at the instance of every person who is denied a permit, or whose permit was not renewed. The Commissioner is given the discretion to determine "the person or persons" who may dispense liquor, and he must have due regard—not primarily for the desire of a particular individual or a designated corporation, but that public convenience and advantage will be promoted. The only rights given an applicant or petitioner are stated in the Act. He may apply to the Commissioner and he may insist that his request be considered, acted upon, and that he be notified of the result. When that is done mandatory provisions of the law have been complied with, and beyond that realm judicial coercion does not lie.

*Third.*—There is nothing in the Act showing a purpose to accord different treatment to the application of a wholesaler, and the petition of a retailer.[1] It is true that the retailer, in a particular community, may come into contact with the public to a greater extent than does a wholesaler; but as to each the Commissioner is given the power to issue or withhold, and when that power is exercised he is not, in the absence of fraud, required to satisfy the applicant, or a Court, that he has done what the law presumes.

*Fourth.*—It is urged that when a permit, either retail or wholesale, has once been issued, and the permittee enters into business, some peculiar equity or right the Court should enforce has thereby been created—that as between one who has not heretofore been favored, and

---

[1] The terms "application" and "petition" are used interchangeably, and such use has no legal significance.

one who has in fact been permitted to sell, the latter stands upon a preferential basis. Support for this argument is said to be found in Article III, § 9 (f), where the Commissioner is authorized to dispense with certain formalities when the question is whether a permit shall be renewed. We think this language merely broadens the already comprehensive discretion of the Commissioner, and allows him to rely upon facts then on file, supplemented by such data as he may properly require. There can be little doubt that the Legislature intended to invest the Commissioner with plenary powers in all matters at issue in the reviews here considered. This statement appears in 30 American Jurisprudence, p. 322, § 123: "The refusal to renew a liquor license violates no one's vested or inalienable rights. The same discretion as that vested in the licensing authority with respect to the original granting of a liquor license exists with reference to renewals." The legislation (§ 8) was to be known as "The Arkansas Alcoholic Control Act." To give emphasis, the words were printed in capitals. An industry formerly outlawed was being legalized on condition, and almost the first thought was one of control—or, as the printed Act discloses, CONTROL!

*Fifth.*—As we have formerly stated, Act 108 does not provide for an appeal from action of the Commissioner in denying an application. The sale of intoxicating liquors is not a matter of right protected by constitutional guarantees. It is only a privilege, to be exercised under the police power. The General Assembly, in legalizing the traffic, can impose such restrictions as it deems appropriate. It may—and this was done by Act 108—authorize a designated individual to administer all purely executive matters pertaining to the business, and it may tell such administrator that it is his duty, in order to promote public convenience and advantage, to restrict the issuance of permits.

When the Commissioner, whose good faith is presumed, has examined and acted upon an application, the unsuccessful applicant has been accorded the process provided by law. The Commissioner's conclusions may

not be those that a judge would have reached; his silence in explaining the mental processes by or through which the result was arrived at may produce in the losing party a feeling that he has been discriminated against, that the Commissioner is unreasonable, and that the official does not appreciate the so-called public need. Even so, the business he is engaged in, or the traffic he proposes to conduct, is not a matter of common right; hence, being a mere privilege, the Legislature may prescribe the conditions that must prevail.

As applied to the transactions in question, certiorari is an appropriate remedy to require the Commissioner to produce the records pertaining to a designated transaction. Such writ should be issued by the Circuit Court if allegations bring the petitioner within the rules herein approved. In other words, the Commissioner may be compelled to perform his official duties; but his duties, in their relation to the subject matter of these reviews, are those prescribed by Act 108.[2]

There is nothing in the record of any of the cases disclosing fraudulent conduct upon the part of the Commissioner; nor are there mutual mistakes, such as Chancery might correct if property rights were involved. On the contrary, the issue is merely this: Glazer's Company, as a wholesaler, insists that because a former Commissioner authorized it to do business, and because it has valuable investments in the State, its permit should, as a matter of course, be renewed, a stipulation being that it has not violated the law. But the Commissioner has decided otherwise, and the General Assembly gave him that power. To take these cases, and review the administrative action in the multitude of cases certain to arise if we should permit the judiciary to be substituted for the person designated by Act 108, would have the effect of substituting the Court's discretion for that of the Commissioner.

2 We do not consider the effect of Act 352 of 1939. Those seeking privileges have not brought themselves within its terms by any affirmative showing. Nor do we decide whether the Act was validly passed. See *Matthews* v. *Bailey, Governor*, 198 Ark. 830, 131 S. W. 2d 425.

In Cause No. 7786—*Cook* v. *Meadows*—the facts are somewhat different from those in the other retail controversies. In response to Meadows' application a certificate of renewal was written and designated as No. 395. It was retained in the Commissioner's files. Wholesalers who asked at the Department of Revenues whether Meadows had procured a 1945-46 license were assured that he had. The Commissioner subsequently made a personal inspection and, for cause he regarded as satisfactory, refused to deliver the certificate, and notified Meadows that his permit would not be renewed. The writer of this opinion thinks there was a valid issuance and that the Commissioner's recourse was a proceeding to cancel. A majority of the Court, however, takes the view that there had not been an issuance within the meaning of Act 108. Attention is directed to § 20, Art. 3, where it is provided that "Before commencing or doing any business for the time for which a permit has been issued, said permit shall be enclosed in a suitable wood or metal frame having a clear glass space, [etc.] . . ." The intent appears to be that the permit holder shall have physical possession of the certificate and display it as the statute provides.

We conclude that the Circuit Court was in error in all four of the retail cases; that Circuit Court erred in Glazer's cases; that questions raised by the Commissioner and by Glazer's in the Chancery cases are moot, and that the Commissioner should be, and he hereby is, relieved from the compulsory processes of both Courts in all of the proceedings.

SMITH, J., dissenting. The practical effect of the majority opinion is to hold that a permittee, whose permit is not renewed, has a remedy, and that that remedy is by certiorari; but the remedy is unavailing when the Commissioner has refused to renew the permit. "The word of promise is kept to the ears of the permittees, but is broken to their hopes."

The majority have not seen proper to recite the facts in any of the cases save one only, and not fully so

in that case. We are, therefore, left in doubt as to the extent of the Commissioner's discretion. The majority do not say that this discretion is absolute and arbitrary and without limitation, and Act 108 has not made it so, yet that is the effect of the majority opinion.

This act confers wide discretion upon the Commissioner. He is permitted in certain cases to revoke a permit, and is required to do so in other cases. He may grant or refuse to grant permits, and may refuse to renew permits. Section 1 of art. III of Act 108 confers upon the Commissioner the power to determine whether public convenience and advantage will be promoted by increasing or decreasing the number of permits outstanding, and this power authorizes him to choose between the holders of outstanding permits. He has other powers. But when and under what conditions may they be exercised? This question the majority do not decide.

In the case of *Hardin, Commissioner of Revenues* v. *Spiers*, 202 Ark. 804, 152 S. W. 2d 1010, we had occasion to consider certain rules and regulations of the Commissioner of Revenues in regard to transporting liquors into, through and out of the state, promulgated under the authority of Acts 108 and 109 of the Acts of 1935, which are related acts. We said that the Commissioner had the power to make and promulgate these rules and regulations, but that ". . . this power must be exercised in a reasonable—and not in an arbitrary—manner." So, with all of the other powers conferred upon the Commissioner by this regulatory legislation.

Unquestionably, the Commissioner has been given very great powers under Act 108. He—and he, alone—may grant or refuse permits to wholesale dealers or to retail dealers, without which neither could legally engage in the sale of intoxicating liquors. But is this power absolute and is its exercise beyond review? If so, he has been given power dangerous to the public weal for any person to possess. It requires no great power of imagination to visualize the possibilities of the possession of that power; and no reflection on the Commissioner is intended by saying so.

It is proper, however, to consider these possibilities in arriving at the legislative intent. For instance, would any one say that the Commissioner may refuse to issue a permit to any one and thereby render the sale of liquor unlawful throughout the state? That power might have been given; but it is certain that it was not given him.

It is true, as the majority say, that the privilege of engaging in the liquor traffic is not a natural right, but is one which may be given or withheld. But that question has been settled by Act 108, which declares that permits may be issued under the conditions there stated. The sale of liquor may, therefore, become and be a legal business and be entitled to the protection of the law as such.

It was said in the case of *Hardin, Commissioner of Revenues* v. *Cassinelli*, 204 Ark. 1016, 1022, 166 S. W. 2d 258, that "Discretion, as used in respect to executive state officials, means not only discretion on questions of fact, but on mixed questions of law and fact. Whether such official decides the question right or wrong is immaterial. Having the power to decide at all carries with it the duty to decide as he perceives the law and the facts to be, and the courts have no power to review his determination on mandamus. We have, heretofore, in effect, so decided. (Citing cases)."

It will be observed, however, that the Commissioner must exercise discretion; but, when exercised, his discretion will not be controlled by the courts; but his power is not absolute and beyond review.

No hearings were had when these permits were refused, and the law does not require that there should have been. The Commissioner may act upon information obtained as a result of personal investigation, without hearing testimony of any kind. But, whatever the reason may be for refusing to issue or renew a permit, he should state that reason for his action upon the application, to the end that it may be determined whether he has acted arbitrarily or capriciously.

Here, the applicants were advised only that their permits would not be renewed, and the only reason as-

signed by the Commissioner for the refusal was that he had acted pursuant to the authority conferred upon him by Act 108. Apparently, under the majority opinion, this was sufficient, as no other reason is recited in any of these cases. If this is sufficient, it must necessarily follow that the Commissioner's power is absolute and unlimited.

If the Commissioner accords no hearing, and refuses the permit without a hearing, and does not give the reason for his action, how may it be reviewed? The majority say in the cases here involved, where no hearing was had, that "it was not necessary for the Commissioner to assign a reason for refusing to renew." Yet, they also say: "In a proper case relief would be available in circuit court through a writ of certiorari directed to the Commissioner, commanding him to send up any existing records relating to the matters complained of." It is not explained how, in any case, as in the cases here under review, where no hearing was had or record made or reason assigned, how the Commissioner might be required to "send up" non-existent records. .

The majority also say: "Proof necessary to sustain the official act (of the refusing the renewal of a permit) would be that the application or petition or request for issuance or reissuance had been brought to the Commissioner's attention, and that he had acted upon it." If this, and nothing else, is all that is required, then, indeed, is the Commissioner's power absolute and beyond review.

In none of the cases here involved, save one, and in that one only partly so, have the majority recited the testimony offered in the court below in the trials from which are these appeals; and we shall not attempt to differentiate them. It would be futile to do so, as the majority hold that none of the permits should be renewed, which the court below had ordered done.

Defining the rights of an applicant to have a permit issued or renewed the majority say: "He may apply to the Commissioner, and he may insist that his request be considered and acted upon, and that he be notified of the

result. When this has been done, mandatory provisions of the law have been complied with, and beyond that realm judicial coercion does not lie."

If these are all the rights the applicant has, then he has no rights which the Commissioner must respect. The Commissioner need only open the door to his office and say to the applicant, who is expectantly waiting on the outside, that his application has been considered and refused, and there would be no remedy by certiorari or otherwise.

It was once the law of this state that the county court of any county had the discretion to grant or entirely refuse licenses to sell liquor at all in the county, or in any township or ward of the county, although the township, ward or county may have voted at the preceding election in favor of issuing licenses. It was so held in the case of *Levy, Ex Parte,* 43 Ark. 42, 51 Am. Rep. 550. But it was there also held that, if the court granted license to some, it could not arbitrarily refuse other applicants who were of good moral character and had complied with the other requirements of the statute in that behalf, and, further, that when some were refused the court should give its reason for the refusal, so that the appellate court might see whether a sound legal discretion had been exercised. In other words, the county court was given a power which must have been exercised with discretion. So, also, here the Revenue Commissioner has been given powers which may not be exercised arbitrarily, but which must be exercised with discretion.

In the chapter on Intoxicating Liquors in 15 R. C. L., § 63, p. 306, under the sub-title of "General Power and Discretion of Officers or Boards," in granting or refusing to grant or renew liquor permits, it is said: "But power of the officers in this respect is not unlimited; their rejection of an application must be made, not arbitrarily or capriciously, but in the exercise of a sound discretion. The term 'discretion' as used in this connection has a legal meaning with safe limitations. The intendment of the law which grants it, whether expressly or

by implication, is that the discretionary decision shall be the outcome of examination and consideration; in other words, that it shall constitute a discharge of official duty and not a mere expression of personal will. An arbitrary refusal of a license, without an examination of relevant facts, and expressing nothing but the mood of the officer, would not be, in contemplation of law, an exercise of the power granted.''

Here, the Commissioner has exercised no discretion which may be reviewed. He has only exercised what he conceives to be his powers under Act 108 to refuse permits, and this the majority apparently approved.

I, therefore, dissent; and am authorized to say that Justices McHANEY and McFADDIN concur in the views here expressed.