ARK. STATE RACING COMM. *v.* SOUTHLAND RACING CORPORATION.

5-1066                                      295 S. W. 2d 617

Opinion delivered November 19, 1956.

*Wood & Smith,* Little Rock, for appellant.

*Goldstein & Smith,* and *Barrett, Wheatley, Smith & Deacon,* for appellee.

*W. H. Dillahunty, amicus curiae.*

GEORGE ROSE SMITH, J. This is a suit by Southland Racing Corporation for a mandatory injunction to require the Arkansas State Racing Commission to issue to Southland a license for the operation of a greyhound race track in Crittenden county. The chancellor overruled the Commission's demurrer to the complaint and, upon the Commission's refusal to plead further, entered a decree for the plaintiff. Three issues of law are presented by the appeal.

First, it is contended that the Crittenden chancery court had no jurisdiction of the case, for the reason that the venue in actions against State boards must be laid in Pulaski county. Ark. Stats. 1947, § 27-603. Despite the settled rule that an objection to venue is waived by a defendant who enters his appearance by the filing of a demurrer, the appellant insists that a different rule for State officers was announced in *Arkansas Highway Com'n* v. *Holt,* 190 Ark. 868, 81 S. W. 2d 929.

We are unable to agree with this contention. The *Holt* case was decided in the interval during which it was held that the legislature could constitutionally consent to suits against the State Highway Commission — a view later rejected in *Arkansas State Highway Com'n* v. *Nelson Bros.,* 191 Ark. 629, 87 S. W. 2d 394. The *Holt* case did not involve, as this one does, the general statute fixing the venue of suits against public officers. There the court considered only an act applying specially to suits against the Highway Commission. Ark. Stats., § 76-232. By that act the legislature gave its consent to such suits but declared that they "shall be brought only at the seat of government, in Pulaski County." We held that the statute was a limitation upon jurisdiction and could not be enlarged by an entry of appearance on behalf of the Highway Commission.

The case at bar is not a suit against the State itself, which at the time of the *Holt* decision could be main-

tained only with the express consent of the legislature. Here Southland simply seeks a mandatory injunction to compel the performance of a ministerial duty — a common law cause of action that exists in the absence of statute. The statute providing that suits against State officers and boards must be brought in Pulaski county relates only to venue, not jurisdiction, and falls within the general rule that the issue of improper venue may be waived. In jurisdictions having similar laws it is held that the statutory venue is a personal privilege for the benefit of the public officer and may be waived by him. *Tullis* v. *Brawley,* 3 Minn. 277; *Howland* v. *Willetts,* 5 Sandf. 219, aff'd 9 N. Y. 170; *McConihe* v. *Palmer,* 76 Hun 116, 27 N. Y. S. 832. This rule is manifestly sound, for situations might often arise in which both parties would prefer, for reasons of convenience, to have the case tried in the county where the cause of action arose. We therefore hold that the question of venue is not a jurisdictional issue that can be asserted after the entry of the Commission's appearance.

Second, on the merits the principal issue is whether the Racing Commission has been invested with unlimited discretion to deny an application for a license when the applicant has met all the requirements exacted by the legislature. The governing statute reads as follows: "Any person, firm, association, or corporation, desiring to apply for a permit under this act must make known to the Commission the name of the person, firm, association, or corporation, and if a corporation, the State under which incorporated, the location where it is desired to conduct or hold a greyhound race meeting, and such other information as the Commission may require; also that they have a plant which is completed and ready for operation, and it will then be the duty of the Commission to inspect said plant at the expense of the applicant, and if the plant is found to be in good condition and completed, the Commission may grant the license provided the officers and directors are reputable citizens of the State of Arkansas and have filed the necessary bond as required in this act." Ark. Stats., § 84-2805.

The complaint alleges that Southland has complied with the statute in every particular, in that it has completed a plant at a cost of about one million dollars, that the Commission has inspected the plant and made no objection to it, that Southland has tendered the required bond, and that its officers and directors are reputable citizens of the State. The complaint avers, and the demurrer concedes, that in spite of Southland's strict compliance with the law the Commission has denied the application upon the ground "that the granting of a permit would not serve the best interests of the State of Arkansas."

The controversy centers upon the statutory provision that the Commission *may* grant the license: is the word "may" used in its permissive or in its mandatory sense? It is of course a familiar rule of statutory construction that "may" is to be construed as "shall" when the context of the statute so requires. *Washington County* v. *Davis*, 162 Ark. 335, 258 S. W. 324; *Viking Freight Co.* v. *Keck*, 202 Ark. 656, 153 S. W. 2d 163, 167. Indeed, this interpretation is so well known that it is uniformly recognized in dictionary definitions of "may." See Webster's New International Dictionary (2d Ed.); Funk & Wagnalls New Standard Dictionary (1949).

It goes without saying that in every instance the problem is that of ascertaining the legislative intent. In contending that the present statute evinces an intention to leave the matter wholly to the Commission's discretion the appellant stresses the use of the word "may" and relies strongly upon our decision in *Cook* v. *Glazer's Wholesale Drug Co. of Ark.*, 209 Ark. 189, 189 S. W. 2d 897. It is apparent, however, that the mere use of the word "may" cannot be conclusive, for then the term could never be construed as being mandatory. Nor is the *Cook* case parallel to this one. There the statute (Ark. Stats., § 48-301) was explicit in stating that the Commissioner of Revenues "is further given the discretion to determine the number of permits to be granted . . . . and the person or persons to whom they

shall be issued." The issue in that case was the extent to which the courts might review the exercise of a discretion admittedly conferred by the statute. Here the question is whether discretionary power exists at all.

In the present case there are several reasons for concluding that the General Assembly meant its language to be mandatory. To begin with, the same section which provides that the Commission *may* grant the permit also provides that an appeal from the Commission's ruling may be taken to the chancery court. It is unnecessary to decide whether equity can constitutionally be vested with this power of review; the point is that the legislature meant to allow a right of appeal. Yet the appeal would necessarily be futile if the decision rested within the unfettered discretion of the Commission; there could be no issue for the chancery court to review. As the court said in *State ex rel. Brockett* v. *City of Alliance,* 65 Neb. 524, 91 N. W. 387, with respect to a similar provision in a liquor licensing law: "It would seem to be a vain and useless thing for the legislature to provide for an appeal from the action of the licensing board to the district court, and there have the case heard on appeal, and a proper judgment entered, if the discretion of the licensing body was unlimited, and to be exercised arbitrarily according to the uncontrolled will of that body."

Again, the act requires that the applicant must have completed the construction of its plant before the request for a license is submitted. It is hard to believe that the legislature meant for an applicant's necessarily substantial investment to depend ultimately upon the whim of the Commission. Such a law would be fairly certain to defeat its own purpose. A like situation was considered in *McLeod* v. *Scott,* 21 Ore. 94, 26 P. 1061, where every applicant for a liquor license was required to submit a majority petition of the legal voters in the precinct and to publish notice of the application. The statute recited that the county court then "may" grant the license. In holding the word to have been used in its mandatory sense the court said: "The petitioner must incur a considerable expense in securing the majority of the legal

voters of the precinct, and in the publication of his petition and notice as prescribed by the act. These requirements of the statute are of substance, and evince an intention on the part of the legislature that upon compliance with the terms of the act a license would issue."

Finally, by the statute the legislature has made the operation of a greyhound race track a lawful undertaking. Needless to say, the power to determine the state's policy in this matter rests with the legislature alone. Yet if the Commission is authorized to refuse a permit in the belief that its issuance would not serve the best interests of the state, it is evident that the Commission is free to nullify the policy that the General Assembly sought to put into effect. This identical issue has been presented in Arizona, where a dog racing act provides that if the Tax Commission finds after investigation that the applicant's reputation is good and that the plan submitted is not objectionable, the Commission "may" grant the application. An application complying in every way with the statute was rejected by the Commission, which found that "it was not for the best interests of the public at this time." The Supreme Court of Arizona held the statute to be mandatory and directed that the license be issued. *Brooke* v. *Moore,* 60 Ariz. 551, 142 P. 2d 211.

Thus there are persuasive reasons for thinking that the legislature used the word "may" in its imperative sense in the act now before us. There is little to support the contrary view except the bare use of the word itself. In these circumstances we cannot avoid the conclusion that the license must be issued upon a showing of literal compliance with every requirement that the law-making body saw fit to impose.

Third, it is contended in an *amicus curiae* brief that pari-mutuel betting upon dog races amounts to a lottery and is therefore prohibited by the constitution. Ark. Const., Art. 19, § 14. This question would ordinarily be presented by the case at bar, and for that reason we held in a per curiam order in Case No. 5-1143 that the same issue could not be litigated in the Pulaski chancery

court during the pendency of the present case. It was then assumed that the issue would be fully explored in the suit now before us, but that assumption proves to have been incorrect. Neither party to this case argues the question of constitutionality or even seeks a determination of that issue.

Upon the record in this case, which goes off on demurrer, we cannot make a final decision as to the validity of the act. An analogous question was considered in *Longstreth* v. *Cook,* 215 Ark. 72, 220 S. W. 2d 433, where it was held that pari-mutuel betting upon horse races is not a lottery for the reason that the outcome of the race is not solely dependent on chance, elements of skill being involved. It will be seen from the opinion that this conclusion was based upon a finding of fact rather than an abstract issue of law. In the case at bar this fact question has not been developed at all, and without proof we have no means of determining whether the result of a greyhound race depends upon something other than pure chance. At present we have no alternative except to say that the act is ostensibly constitutional, for it has not been shown to be otherwise. A definitive ruling, however, is reserved for the future.

Affirmed.

McFADDIN, J., concurs.