HARDIN, COMMISSSIONER OF REVENUES, *v.* SPIERS.

4-6487                                    152 S. W. 2d 1010

Opinion delivered July 7, 1941.

*Elsijane Trimble* and *Leffel Gentry,* for appellant.

*Talley, Owen & Talley,* for appellee.

SMITH, J.  Appellee is the holder of a permit to transport alcoholic liquors through the state of Arkansas in interstate commerce, which permit was issued pursuant to rules and regulations promulgated by the Commissioner of Revenues under the authority of acts 108 and 109 of the Acts of 1935.

The constitutionality of the legislation pursuant to which permits of this character are issued was thoroughly considered in the recent case of *Duckworth* v. *State,* 201 Ark. 1123, 148 S. W. 2d 656, and it would be a work of supererogation to further review the subject.  We reaffirm the holding of that case that the commissioner

has the authority to issue such permits, and to make reasonable regulations.

Pursuant to this authority, the Commissioner of Revenues issued, on February 3, 1941, Supplemental Regulation No. 31, the portions of which, relevant here, are as follows:

Any contract or private carrier shall make application to the Commissioner of Revenues for a permit, which permit shall state in detail the point of origin of such shipment, the point where such shipment shall enter the state of Arkansas, the route to be used in transporting such liquors, and the point where the shipment will leave the state.

It is further required that the application for a permit shall inform the Commissioner of Revenues the day or date of the week when such shipment will be made, the approximate duration of the entire trip through the state, a description of the vehicle or conveyance in which such shipment will be made, the motor and license numbers, and the quantities, in case lots, of such liquors; and, if for more than one shipment, the regularly established schedule that such contract or private carrier intends to follow in making repeated shipments pursuant to such permit.

The contract or private carrier is required to file a surety bond in the sum of $2,000, conditioned that he will comply with the laws of this state and the regulations pursuant to which the permit is issued, and conditioned further that, in the event the carrier violates any of the terms and provisions of such laws and regulations, the penalty of the bond shall be forfeited to the Revenue Commissioner and the permit be canceled.

Such permit shall be issued only to carriers who shall enter the state at points known as "ports of entry" where there is a regularly established revenue inspection station. The carrier is required to report to the inspector, and allow the inspector to examine and check his shipment.

Upon leaving the state the carrier is required to report either to the revenue inspector at the boundary

line of the state or to the nearest county revenue inspector of the county from which the shipment leaves the state, in which instances the revenue inspector, or county revenue inspector, shall also check the permit and make an inspection of the shipment of spirituous liquors.

The inspectors, both at ports of entry and of the counties from which the shipments leave the state, are required to furnish to the Commissioner of Revenues a record of the permits and shipments which he has inspected.

Appellee, Spiers, received such a permit containing a recital of the information furnished in the application therefor. For this permittee the point of entry into the state was Blytheville, and the time of entry "before noon." The point of exit from the state was Hamburg, and the time of exit "between 6 and 10 p. m." The schedule of shipments was Monday, Tuesday, Wednesday, Thursday and Friday. The permit further specified the numbers of the highways over which the permittee should travel in passing through the state.

A citation issued to appellee, Spiers, to show cause why his permit should not be revoked, the basis of the charge being that one of his drivers had driven a truckload of spirituous liquors out of the state without the inspection required by the permit.

There is no substantial conflict in the testimony heard by the Commissioner of Revenues on this question. One of the appellee's drivers entered the state on the morning of May 14th, where the required inspection was made. The driver inquired about the inspection at Hamburg required by his permit, and was told by the inspector at Blytheville that the inspection could be made at Hamburg by any bonded officer. The driver drove on and arrived at Hamburg at 6 p. m. He went to the office of J. C. Newton, the inspector at Hamburg, but was unable to find him. He then went to the sheriff of the county, and that officer gave him a somewhat superficial inspection, and checked him out, and permitted the driver to proceed out of the state from Hamburg.

Inspector Newton admitted that he was not available for the inspection, and that his previous practice had been for a justice of the peace or the sheriff of the county to make the inspections for him in his absence, and he would sign and forward the report thereof to the revenue department. On Mondays and Saturdays he worked in Hamburg from 8 a. m. to 5 p. m., and on Tuesdays, Wednesdays, Thursdays and Fridays, he worked from 8 a. m. to 12 noon. He engaged in what he called field work in the afternoon on those days. May 14th was Wednesday, and on that day Newton worked only until noon as inspector, and devoted the afternoon of that day to field work which he said covered the entire county. His home was in Portland, 20 miles from Hamburg. He had no deputy at Hamburg, but had used both a justice of the peace and the sheriff as inspectors. The sheriff told the driver that Newton had gone to his home, and the sheriff made the inspection and forwarded to the revenue department the report thereof. This report was in proper form except that under Regulation .31 the sheriff had no authority to make the inspection and report. Newton was asked: ''You didn't know, on the 14th but what it was all right for him (the sheriff) to make the report?'' and he answered: ''No, sir, I didn't know.'' Newton admitted that the justice of the peace had checked out liquor consignments for appellee on May 5th and May 8th, and that he had signed the reports on which those shipments had been checked out.

Other testimony was offered showing the system pursued by the revenue department, the purpose being to know and to have records showing that the liquors brought into the state under these permits had been carried out of the state. On this testimony, the Revenue Commissioner canceled the permit of appellee, and that action was enjoined by the chancery court, from which decree the commissioner has appealed.

As we have said, we think the promulgation of regulation No. 31 was a valid exercise of the power conferred by law upon the Commissioner of Revenues. He has the right to require that persons appointed by and responsible to him should make the inspections, and to ignore

inspections otherwise made. But the regulations must receive a reasonable interpretation and application, under which their enforcement will impose no unnecessary burdens on the interstate commerce which he proposes to regulate. The state has the power, under the 21st amendment to the Constitution of the United States, to prohibit the sale of intoxicating liquors in this state, and, to make that legislation effective, may prohibit its importation into the state; but it has not attempted to exercise that power.

The undisputed testimony shows an attempt, in the utmost good faith, on the part of the appellee, and the driver of his truck, to comply with the law and the regulations of the Revenue Commissioner. The driver had no authority to leave the state at any point except from Hamburg, and he had no right to demand an inspection of his cargo at any time except Mondays, Tuesdays, Wednesdays, Thursdays and Fridays, between the hours of 6 and 10 p. m. on those days. But he did have the right to have the required inspection during those hours. The Commissioner of Revenues has the power to designate at what times, and from what places, and over what highways, he will permit cargoes of spirituous liquors to leave the state; but this power must be exercised in a reasonable—and not in an arbitrary—manner. Having exercised that power, the Commissioner should have afforded the shipper a reasonable opportunity to conform to and to comply with his regulations. On the other hand, the shipper must make a reasonable and good faith attempt to comply with the regulations. He would not, for instance, be allowed to drive through and out of the state, even though he presented his truck for inspection within the designated hours, because the inspector had temporarily stepped aside and was not immediately available.

Upon the whole case, we are of the opinion that the chancellor was correct in holding that appellee had not given just cause for the cancellation of his permit, and the decree enjoining that action will be affirmed. It is so ordered.