## DUCKWORTH *v.* ARKANSAS.

No. 43.   Argued November 17, 18, 1941.—Decided December 15, 1941.

*Mr. Harold R. Ratcliff,* with whom *Mr. Cecil B. Nance* was on the brief, for appellant.

*Messrs. Jno. P. Streepey,* Assistant Attorney General of Arkansas, and *Leffel Gentry* argued the cause, and *Mr. Jack Holt,* Attorney General, was with *Mr. Streepey* on the brief, for appellee.

Mr. Chief Justice Stone delivered the opinion of the Court.

Appellant was convicted and fined by an Arkansas court for transporting intoxicating liquor through the state without a permit as required by an Arkansas statute. The question for decision is whether this statutory requirement and its penal sanction unduly encroach upon the power over interstate commerce delegated to Congress.

The Arkansas Supreme Court sustained the requirement of the permit as a local police regulation permissible under the commerce clause. 201 Ark. 1123, 148 S. W. 2d 656. The case comes here on appeal under the provisions of § 237 (a) of the Judicial Code, 28 U. S. C. § 344 (a), § 861 (a) (b).

Section 14177, Pope's 1937 Digest of Arkansas Statutes, § 5, Act 109 of 1935, under which appellant was convicted, makes it unlawful for any person to ship into the state any distilled spirits without first having obtained a permit from the state commissioner of revenue. The statute provides that the form of permit and the shipments into the state shall be governed by rules and regulations promulgated by the commissioner. Appellant was tried upon a stipulation of facts which tended to show that, when arrested in Arkansas, he was engaged in transporting by motor truck, without a permit, a load of distilled spirits from a point in Illinois to a point in Mississippi. The state court held that this violated § 14177. At the time of the offense, there were no regulations specifically applicable to transportation passing through the state, the regulations then in force being adapted to transportation for delivery within the state or from point to point within the state.

We have no occasion to decide whether the Arkansas statute, when applied to transportation passing through that state for delivery or use in another, derives support from the Twenty-first Amendment, which prohibits the "transportation or importation" of intoxicating liquors "into any state . . . for delivery or use therein" in violation of its laws, cf. *United States* v. *Gudger,* 249 U. S. 373. Nor need we decide whether appellant's admission that the transported liquor was intended for importation into Mississippi for illegal use there establishes a violation of the Twenty-first Amendment while he was in Arkansas, so as to deprive him of the right to seek protection of the

commerce clause on his journey through Arkansas, cf. *McFarland* v. *American Sugar Rfg. Co.,* 241 U. S. 79, 84–5. We may also assume that appellant's admission no more deprives him of the right to invoke the protection of the commerce clause against the Arkansas statute than did intended violation by the importer of the liquor laws of the state of destination before the adoption of the Webb-Kenyon Act, 37 Stat. 699, and the Twenty-first Amendment. See *Bowman* v. *Chicago & N. W. Ry. Co.,* 125 U. S. 465; *Leisy* v. *Hardin,* 135 U. S. 100. For we are of the opinion that, upon principles of constitutional interpretation consistently accepted and followed by this Court ever since the decisions in *Willson* v. *Black Bird Creek Marsh Co.,* 2 Pet. 245, and *Cooley* v. *Board of Wardens,* 12 How. 299, the commerce clause does not foreclose the Arkansas regulation with which we are now concerned.

The commerce here is transportation alone, there being no question of sale or use within the state of regulation. We may therefore put to one side the cases in which local restrictions or prohibitions on sale or use of intoxicating liquor or other articles of commerce, unaided by Acts of Congress, have been deemed a prohibited burden on interstate commerce, see *Bowman* v. *Chicago & N. W. Ry. Co., supra; Leisy* v. *Hardin, supra.* The present scheme of regulation is narrower in operation and has a less restrictive effect upon the commerce. It does not forbid the traffic in liquor, nor does it impede it more than is reasonably necessary to inform the local authorities who is to effect the transportation through the state, and to afford opportunity for them to police it.

The Arkansas Supreme Court in this case has declared that under the statute appellant was entitled to a permit on application, which he does not appear to have made; that the permit requirement is in its nature an inspection measure for which only a nominal fee, necessary to defray the cost of issuing it and of police inspection

and of necessary reports, is charged.[1]   It also said that any failure by the state commissioner to act reasonably and promptly in administering the law would be controlled by the courts through mandamus.   In a later case, *Hardin v. Spiers,* 152 S. W. 2d 1010, arising under regulations not in force at the time of appellant's conviction, the same court declared that the commissioner must exercise this power in a reasonable, not an arbitrary, manner.

While the commerce clause has been interpreted as reserving to Congress the power to regulate interstate commerce in matters of national importance, that has never been deemed to exclude the states from regulating matters primarily of local concern with respect to which Congress has not exercised its power, even though the regulation has some effect on interstate commerce.   As we had occasion to point out at the last term of Court, there are many matters which are appropriate subjects of regulation in the interest of the safety, health and well-being of local communities which, because of their local character and their number and diversity, and because of the practical difficulties involved, may never be adequately dealt with by Congress.   Because of their local character, also, there is wide scope for local regulation without impairing the uniformity of control over the commerce in matters of national concern and without materially obstructing the free flow of commerce, which were the principal objects sought to be secured by the commerce clause.   Such regulations, in the absence of supervening Congressional action, have for the most part been sustained by this Court,

---

[1] The regulations promulgated by the commissioner on February 3, 1941, after appellant's conviction, provided for the payment of a license fee for the permit.   It does not appear that there was any prescribed fee at the time of appellant's offense.   Moreover, his sole contention is that the commerce clause precludes the state from exacting any form of permit, either with or without a fee, for the interstate transportation of liquor through the state.

notwithstanding the commerce clause. See *California* v. *Thompson*, 313 U. S. 109, 113, *et seq.*, and cases cited. See also cases collected in *DiSanto* v. *Pennsylvania*, 273 U. S. 34, 39, 40, and in *South Carolina Highway Dept.* v. *Barnwell Bros.*, 303 U. S. 177, 188, Note 5, and 191.

In the cases referred to, the Court has sustained a variety of local regulations designed to safeguard the states from injurious local effects that may attend interstate transportation. Familiar examples are inspection and quarantine laws for the protection of local health and safety, applicable to persons, animals, and merchandise moving in interstate commerce. Again, a state may insure the safe and convenient use of its harbors and navigable waterways by controlling the movement of vessels in interstate and foreign commerce; in the interests of safety it may control the operations of interstate trains and of their employees and appliances. ·

Of recent years, the Court has sustained state regulations of the size and weight of motor cars moving interstate, designed to insure the safe and economical use of the states' highways. *South Carolina Highway Dept.* v. *Barnwell Bros.*, *supra*, and cases cited. A state may police "caravans" of motor vehicles moving over its highways in interstate commerce and charge a compensatory license fee for doing it. *Morf* v. *Bingaman*, 298 U. S. 407; *Clark* v. *Paul Gray, Inc.*, 306 U. S. 583. It may, in the interest of public safety and convenience, restrict particular types of motor vehicles, moving in interstate commerce, to particular areas. *Sproles* v. *Binford*, 286 U. S. 374, 393–5; cf. *Clark* v. *Paul Gray, Inc.*, *supra*, 598. And a state may undertake to insure the fitness and integrity of those negotiating contracts for interstate transportation, by licensing them and requiring a bond to insure their good behavior. *California* v. *Thompson, supra.*

While the subject matter of the present regulation, transportation of liquor, with its attendant dangers to the

communities through which it passes, differs in many respects from those which we have mentioned, all are alike in their tendency, if unregulated, to affect the public interest adversely in varying ways depending on local conditions. The efforts at effective regulation, state and national, of intoxicating liquor, evidenced by the long course of litigation in this Court, have not left us unaware of the peculiar difficulties of controlling it or of its tendency to get out of legal bounds. The present requirement of a permit is not shown to be more than a means of establishing the identity of those who are to engage in the transportation, their route and point of destination, and affords opportunity for local officials to take appropriate measures to insure that the liquor is transported without diversion, in conformity to the permit. The permit device is not unlike state requirements of health certificates for animals or certificates of inspection for goods, which have been sustained here both as to transportation into a state, *Savage* v. *Jones,* 225 U. S. 501, 528; *Mintz* v. *Baldwin,* 289 U. S. 346; and through it, *Reid* v. *Colorado,* 187 U. S. 137; cf. *Morf* v. *Bingaman, supra.* Where the power to regulate commerce for local protection exists, the states may adopt effective measures to accomplish the permitted end. The Arkansas statute does not conflict with any act of Congress. It does not forbid or preclude the transportation, or interfere with the free flow of commerce among the states beyond what is reasonably necessary to protect the local public interest in preventing unlawful distribution or use of liquor within the state. It does not violate the commerce clause. Cf. *Ziffrin, Inc.* v. *Reeves,* 308 U. S. 132.

What we have said is restricted to the statute as applied under the regulations in force at the time of petitioner's alleged offense. It will be time enough to deal with abuses of the permit system if and when they arise. Nor have we occasion to consider the state's authority to regulate other

articles of commerce less susceptible to uses injurious to the communities through which they pass. Cf. *Clark Distilling Co.* v. *Western Maryland Ry. Co.*, 242 U. S. 311, 332; *Ziffrin, Inc.* v. *Reeves, supra,* 138.

*Affirmed.*

MR. JUSTICE JACKSON, concurring in result:

I agree that this Court should not relieve Duckworth of his conviction, but I would rest the decision on the constitutional provision applicable only to the transportation of liquor, and refrain from what I regard as an unwise extension of state power over interstate commerce.

I

Appellant was convicted for transporting a load of intoxicating liquor through Arkansas, without permit from that State, on the way from Illinois to Mississippi. The owner of the liquor testified, and his testimony was treated as a stipulation of fact, "that the liquor was intended to be sold in the State of Mississippi in violation of the state laws of Mississippi."

The Twenty-first Amendment provides:

"The transportation or importation into any State, Territory, or possession of the United States for delivery or use therein of intoxicating liquors, in violation of the laws thereof, is hereby prohibited."

Duckworth now contends that it is our duty to assure him safe conduct as against the action of Arkansas, although his goal is to violate both the laws of Mississippi and the Federal Constitution. He asks us to hold that one provision of the Constitution guarantees him an opportunity to violate another. The law is not that tricky.

Whether one transporting liquor across Arkansas to a legal destination might not have some claim to federal protection, we do not need to consider. One who assails the constitutionality of a statute must stand on his own

right to relief.[1]  Since this appellant had no rightful claim to constitutional protection for his trip, the whole purpose of which was to violate the Constitution which he invokes, we should leave him where we find him, and for this reason I concur in the judgment of this Court affirming the conviction.

## II

If we yield to an urge to go beyond this rather narrow but adequate ground of decision, we should then consider whether this liquor controversy cannot properly be determined by guidance from the liquor clauses of the Constitution.  These clauses of the Twenty-first Amendment create an important distinction between state power over the liquor traffic and state power over commerce in general.  The people of the United States knew that liquor is a lawlessness unto itself.  They determined that it should be governed by a specific and particular Constitutional provision.  They did not leave it to the courts to devise special distortions of the general rules as to interstate com-

---

[1] Mr. Justice Holmes, speaking for a unanimous Court, laid down the rule as to tax cases, equally applicable to this, if, indeed, this is not itself something of a tax case.  He pointed out that the Court does not consider arguments on constitutional grounds "unless the party setting up the unconstitutionality of the state law belongs to the class for whose sake the constitutional protection is given, or the class primarily protected . . ."  *Hatch* v. *Reardon*, 204 U. S. 152, 160.

Mr. Justice Cardozo has stated for the Court that those who attack the constitutionality of state statutes "are not the champions of any rights except their own."  *Henneford* v. *Silas Mason Co.*, 300 U. S. 577, 583.

Mr. Justice Brandeis has given expression to the same view for the Court in these terms:

"We have no occasion to consider the constitutional question, because it appears that the plaintiff is without standing to present it.  One who would strike down a state statute as obnoxious to the Federal Constitution must show that the alleged unconstitutional feature injures him."  *Premier-Pabst Co.* v. *Grosscup*, 298 U. S. 226, 227.

merce to curb liquor's "tendency to get out of legal bounds." It was their unsatisfactory experience with that method that resulted in giving liquor an exclusive place in constitutional law as a commodity whose transportation is governed by a special, constitutional provision.

Transportation itself presented no special dangers or hazards, but it might be a step in evading and undermining a policy as to use and sale of liquor which the state has a right to prescribe for itself. Regulated transportation of liquor is a necessary incident of regulated consumption and distribution. So the Twenty-first Amendment made the laws as to delivery and use in the state of destination the test of legality of interstate movement. This obviously gives to state law a much greater control over interstate liquor traffic than over commerce in any other commodity.

If the Twenty-first Amendment is not to be resorted to for the decision of liquor cases, it is on the way to becoming another "almost forgotten" clause of the Constitution. Compare *Edwards* v. *California, ante,* p. 183. It certainly applies to nothing else. We should decide whether this Arkansas statute is sustainable under the Twenty-first Amendment. Does it authorize a state to exact some assurance that all liquor entering its territory either is imported for lawful delivery under its own laws or will pass through without diversion? The Amendment might bear a construction that would allow a state to prohibit liquor from entering its borders at all unless by responsible carrier under consignment to some lawful destination within or beyond the state. I should not at all object to considering all of the potential evils which the Court's opinion associates with the liquor traffic, and some more that I could supply, to be sufficient reasons for giving a liberal interpretation to the Twenty-first Amendment as to state power *over liquor*. But the Court brushes aside the liquor provisions of the Twenty-first Amendment.

## III

The opinion of the Court solves the present case through a construction of the interstate commerce power. It regards this liquor as a legitimate subject of a lawful commerce, and then, because of its special characteristics, approves this admittedly novel permit system and thus expands the power of the state to regulate such lawful commerce beyond anything this Court has yet approved.

The extent to which state legislation may be allowed to affect the conduct of interstate business in the absence of Congressional action on the subject has long been a vexatious problem. Recently the tendency has been to abandon the earlier limitations and to sustain more freely such state laws on the ground that Congress has power to supersede them with regulation of its own. It is a tempting escape from a difficult question to pass to Congress the responsibility for continued existence of local restraints and obstructions to national commerce. But these restraints are individually too petty, too diversified, and too local to get the attention of a Congress hard pressed with more urgent matters. The practical result is that in default of action by us they will go on suffocating and retarding and Balkanizing American commerce, trade and industry.

I differ basically with my brethren as to whether the inertia of government shall be on the side of restraint of commerce or on the side of freedom of commerce. The sluggishness of government, the multitude of matters that clamor for attention, and the relative ease with which men are persuaded to postpone troublesome decisions, all make inertia one of the most decisive powers in determining the course of our affairs and frequently gives to the established order of things a longevity and vitality much beyond its merits. Because that is so, I am reluctant to see any new local systems for restraining our national commerce

get the prestige and power of established institutions. The Court's present opinion and tendency would allow the states to establish the restraints and let commerce struggle for Congressional action to make it free. This trend I am unwilling to further in any event beyond the plain requirements of existing cases.

If the reaction of this Court against what many of us have regarded as an excessive judicial interference with legislative action is to yield wholesome results, we must be cautious lest we merely rush to other extremes   The excessive use for insufficient reason of a judicially inflated due process clause to strike down states' laws regulating their own internal affairs, such as hours of labor in industry, minimum wage requirements, and standards for working conditions, is one thing. To invoke the interstate commerce clause to keep the many states from fastening their several concepts of local "well-being" onto the national commerce is a wholly different thing.

Our national free intercourse is never in danger of being suddenly stifled by dramatic and sweeping acts of restraint. That would produce its own antidote. Our danger, as the forefathers well knew, is from the aggregate strangling effect of a multiplicity of individually petty and diverse and local regulations. Each may serve some local purpose worthy enough by itself. Congress may very properly take into consideration local policies and dangers when it exercises its power under the commerce clause. But to let each locality conjure up its own dangers and be the judge of the remedial restraints to be clamped onto interstate trade inevitably retards our national economy and disintegrates our national society. It is the movement and exchange of goods that sustain living standards, both of him who produces and of him who consumes. This vital national interest in free commerce among the states must not be jeopardized.

I do not suppose the skies will fall if the Court does allow Arkansas to rig up this handy device for policing liquor on the ground that it is not forbidden by the commerce clause, but in doing so it adds another to the already too numerous and burdensome state restraints of national commerce and pursues a trend with which I would have no part.