WELBORN v. MORLEY, COMMISSIONER OF REVENUES.

4-9650                                    243 S. W. 2d 635

Opinion delivered November 19, 1951.

*Ted Goldman,* for appellant.

*O. T. Ward,* for appellee.

HOLT, J.   This action involves the seizure and confiscation of fifty-two cases of intoxicating liquor in the town of Ft. Lynn, Miller County, Arkansas, while appellant was attempting to transport this liquor from Shreveport, Louisiana, to Seneca, Kansas.

It was stipulated: "That on February 12, 1951, John L. Welborn was arrested in Miller County, Arkansas, and charged under § 48-404 of the Arkansas Statutes of 1947 with transporting a cargo of liquor and wine into

and through the State of Arkansas without a legal permit so to do from the Arkansas Commissioner of Revenues; that John L. Welborn was tried and convicted in the municipal court of Texarkana, Arkansas, under said § 48-404 and fined $500; that the cargo of liquor taken from the possession of the said John L. Welborn was delivered by the sheriff's department of Miller County, Arkansas, to the Arkansas Revenue Commissioner and the cargo received by the Arkansas Revenue Commissioner consisted of 47 cases of whiskey and 5 cases of wine; that affixed to said whiskey and wine received by the Revenue Commissioner were the Federal Stamps and the Louisiana Export Stamps; that none of the liquor or wine had the Arkansas Tax Stamps affixed thereto; that the said John L. Welborn did not have a permit to transport liquor into and through Arkansas and never applied for such a permit; that at the time of his arrest 3 invoices were taken from his person by the Miller County sheriff's department; that John L. Welborn has made a part of his petition photostatic copies of said invoices and that they may be considered as evidence for the said John L. Welborn.''

It also appears from the invoices of the liquor in evidence that public Highway No. 80 was the designated route over which the whiskey was to be transported and the drivers were listed as L. Lewis and John Lewis, but when appellant, Welborn, was apprehended by officers at Ft. Lynn in Miller County, he was driving (accompanied by his wife) on public Highway No. 71. Highway 80 out of Shreveport, Louisiana, runs through north Louisiana, east and west through Texas on to El Paso, and does not touch Arkansas or Kansas. It further appears that when appellant began his journey, he had sixty cases of liquor on the truck, but when arrested, he had only fifty-two cases in his possession. What became of the other eight cases was not disclosed.

As indicated, appellant was attempting to transport the liquor here involved into and through Arkansas to Kansas without proper permits in violation of law.

From a judgment of the Pulaski Circuit Court affirming the order of the State Revenue Commissioner, condemning and confiscating this liquor, comes this appeal.

Proceedings were had under § 48-404 [§ 5 (a), Act 109 of the 1935 Legislature] and §§ 48-925, 48-926 and 48-930, Ark. Stats., 1947.

For reversal, appellant contends that "(1) §§ 48-404 and 48-925 are invalid under the Commerce Clause (U.S.C.A., Const., Art. 1, § 8, Cl. 3) and the 21st Amendment (27 U.S.C.A.); (2) If the court upholds the validity of § 48-404 as applicable to the facts in this case, § 48-925 is invalid for the reason that confiscation, under facts of this case, is unreasonable and an undue burden on interstate commerce, and a denial of due process under the Constitution of Arkansas (Art. 2, § 8); and (3) By forfeiture and confiscation and failure and refusal to permit appellant to transport the cargo on to Kansas or back to Louisiana when he discovered necessity for the permit, the Commissioner overstepped and went beyond local police power of a State to regulate interstate liquor traffic."

We hold that all of the above contentions have been answered against appellant in our decisions.

The 21st Amendment of the Constitution of the United States provides: "Section 2. The transportation or importation into any State for delivery or use therein of intoxicating liquors, in violation of the laws thereof, is hereby prohibited."

It appears that Congress has enacted no laws governing the transportation of whiskey, but has left this question to the separate States. Arkansas, by the above permit law, § 48-404, has not sought to prohibit whiskey from being transported across its borders, but does seek to regulate same through a permit requirement. As to the validity of such a permit law, in the case of *Jones* v. *State,* 198 Ark. 354, 129 S. W. 2d 249, where the defendant while attempting to transport a cargo of whiskey

through Arkansas to Oklahoma, without a permit, was criminally charged, found guilty, and fined, we said: "It would serve no useful purpose to review all the authorities on the question of the right of the State to prohibit or condition the transportation of intoxicating liquors throughout the State.

"We think the case of *Dunn* v. *United States, supra,* [96 Fed. 2d 119, 117 A.L.R. 1302], and the Tennessee case above cited, [*Haumschilt* v. *State,* 142 Tenn. 520, 221 S. W. 196] settle this question. Arkansas had not undertaken to prohibit the transportation, but conditions it. That is, liquor may not be transported without a permit, as provided by law. Under the facts in this case there can be no question but that the appellant violated the law as stated in § 14177 of Pope's Digest, [§ 48-404, Ark. Stats., 1947] and that his conviction was proper."

We point out that at the time of our decision in this Jones case, the Arkansas law made no provision for the confiscation of whiskey being transported in violation of our permit statute above.

In the more recent case of *Duckworth* v. *State,* 201 Ark. 1123, 148 S. W. 2d 656, in which defendant, Duckworth, while transporting whiskey from Illinois to Mississippi, was arrested in Arkansas and charged with violation of the Arkansas law by transporting whiskey without a permit, we said: "Other than Act 109 there is no statute dealing with transportation in the sense contemplated by that measure. It must be assumed, therefore, that the General Assembly intended to cover all requirements, and that the term 'into' as used in the act includes shipments entering the State, but consigned to points within or beyond. . . .

"The Commissioner's regulation requiring those proposing to transport liquor through Arkansas to procure a permit is not in excess of authority conferred by the Legislature. . . .

"If we concede that some burden has been placed upon such commerce (by the permit requirement), the answer is that it may be done. . . . In the absence

of action by Congress there is no doubt of the right of a State to require those engaged in interstate transportation of liquors—those who use Arkansas highways and other State facilities and who receive its police protection while engaged in such commercial pursuit—to procure from the Commissioner of Revenues a permit conforming to regulations not inharmonious with Act 109 of 1935.''

This Duckworth case was appealed to the Supreme Court of the United States and affirmed. 314 U. S. 390, 62 S. Ct. 311, 86 L. Ed. 294.

In the case of *Carter, et al.* v. *Virginia,* (1944), 321 U. S. 131, 64 S. Ct. 464, 88 L. Ed. 569, affirming 181 Va. 306, 24 S. E. 2d 530, wherein appellants were transporting a cargo of liquor from Maryland through Virginia to North Carolina, without having first procured a Virginia permit, and where the laws of Virginia dealing with permit requirements for transportation of whiskey were almost identical with our Arkansas permit requirement, the United States Supreme Court, citing the Duckworth case, with approval, said: ''We are satisfied that Virginia may, notwithstanding the Commerce Clause and independently of the Twenty-first Amendment, in order to protect herself from illicit liquor traffic within her borders, subject the shipment of liquor through Virginia to the regulations here in question. We have recognized that the several States in the absence of Federal legislation may require regulatory licenses for through shipments of liquor in order to guard against violations of their own laws. *Duckworth* v. *Arkansas,* 314 U. S. 390, 62 S. Ct. 311, 86 L. Ed. 294. Thus this court has extended to this very field its recognition that regulation in interstate commerce by local authority in the absence of Congressional action is admissible to protect the State from injuries arising from that commerce. . . . The commerce power of Congress is not invaded by such police regulations as Virginia has here enforced. . . .

''We are therefore dealing with a case in which Virginia is attempting no more than the enforcement of her own laws; she is not seeking to inflict punishment for the violation of the laws of North Carolina. . . . (The

Supreme Court of Virginia said in this case) : 'We cannot escape the conclusion that one who deliberately and intentionally violates the Federal Constitution and the law of his resident State, in the unlawful transportation of liquor would hardly hesitate to violate the laws of this State while passing through it if he thought he might profit thereby. We cannot shut our eyes to the possibilities of such a situation and the necessity of prevention.'

"But in the present case we need not consider the power of Virginia under the Twenty-first Amendment to regulate through shipments. It is enough that Virginia could conclude, in the absence of contrary Federal legislation, that she could not safely permit the transportation of liquor through her territory by those who concededly mean to break Federal laws and the laws of a neighboring State. By her ruling she has imposed no substantial clog on whatever cognate rights her sister States may have to determine their own policies regarding intoxicating liquors and to receive alcoholic beverages in interstate commerce, if they so desire."

Here, appellant not only had no permit in Arkansas, but according to the evidence, he had no permit to transport or carry his cargo of whiskey into Kansas, as required by the laws of that State, ("Kansas Liquor Control Act" of the 1949 session of the Kansas Assembly, chapter 242; General Statutes of Kansas, Annotated (1949), chapter 41, "Intoxicating Liquors and Beverages").

Appellant was asked but refused to answer the following question: "Q. Do you have any type of alcoholic beverage permit issued by the State of Kansas? Objection by Mr. Goldman on the ground that it is immaterial and possibly might be incriminating."

Finding no error, the judgment is affirmed.