AARON K. NEELD, DIRECTOR DIVISION OF TAXATION, STATE OF NEW JERSEY, PLAINTIFF, v. LEON GIROUX AND LEO DUBOIS, DEFENDANTS.

Middlesex County Court
Law Division

Decided October 18, 1956.

*Mr. George Winne,* attorney for defendant Giroux.

*Mr. Francis J. Tarrant,* Deputy Attorney-General, for the State (*Mr. Grover C. Richman, Jr.,* Attorney-General).

KALTEISSEN, J. C. C. On March 17, 1956, the defendant-appellant Leon Giroux, and the defendant Leo Dubois were apprehended by the New Jersey State Police and charged with violating *N. J. S. A.* 54:40A–32 in that they transported 154 cases of unstamped cigarettes in the State of New Jersey without having in their possession invoices or delivery tickets showing the true name of the consignee or purchaser and the true name and address of the person who was to assume the payment of the state tax at the point of ultimate destination.

Pursuant to the aforementioned statute, proceedings were also instituted by Aaron K. Neeld, Director of the Division of Taxation, to forfeit and confiscate the 154 cases of cigarettes seized at the time of the defendants' apprehension, and the 1953 GMC truck in which the cigarettes were being transported.

A hearing was held in the Municipal Court of the Borough of Milltown, N. J., and the defendant Giroux was found guilty of violating the statute and fined the sum of $2,685, plus $10 costs. At the same time the court directed a judgment of acquittal as to the defendant Leo Dubois, but directed confiscation of the cigarettes in favor of the State of New Jersey. As to the vehicle, it was agreed by the parties that the same should be returned to a Vermont bank who held a lien on it. From these judgments the defendant appeals to this court.

This proceeding *de novo* was considered on the basis of the transcript compiled in the municipal court and the oral arguments and briefs submitted by counsel for the respective parties.

It would appear, and I find it a fact, that the appellant Giroux and Dubois were on March 17, 1956 apprehended by Trooper Burke of the New Jersey State Police on the New Jersey Turnpike in the Borough of Milltown and interrogated by Burke as to the load of cigarettes in his (Giroux') truck. The latter, in response to Burke's inquiries, told him that he had purchased the cigarettes in Maryland for friends of his in Vermont and that he was taking them to the Canadian line where he would be met by a Canadian truck into which he was to transfer the cigarettes. Giroux produced two invoices from R. Baylin Co., 222 Market St., Wilmington, Delaware, covering the purchase of the cigarettes, dated "3/16/1956." Both invoices indicated that the merchandise referred to therein was sold to "Leon Giroux" at address "Elkton, Maryland, c/o Magnesium Plant." On the lower portion of the invoices, next to the printed words "customer's signature," was written "Leon Giroux."

In a statement given to Troopers Burke and Osinski of the State Police, he admitted that a fellow in Canada, whose name he knew but was not supposed to tell, gave him $15,000 in cash with which he was to purchase the cigarettes. He was to receive $300 or $400 for his efforts in purchasing and transporting the cigarettes. He also admitted to Albert Baytel, Chief Investigator of the Cigarette Tax Bureau, and

Jack Silverstein, Legal Analyst of the Cigarette Tax Bureau, that the cigarettes did not belong to him but belonged to a friend of his in Canada who asked him to go to Delaware to pick them up, and that he had paid $186 of his own money in addition to the $15,000 given to him by his Canadian friend.

At the trial, Giroux' testimony was at variance with what he had said and the statement that he had signed at the time of and immediately subsequent to his arrest. He testified that he had borrowed the money with which to purchase the cigarettes from a friend and that he was going to bring them to a friend in Vermont who was to sell them and pay the tax that was due there.

Giroux' testimony was patently in conflict with his statements, and I am compelled to give credence to his initial version in this instant, considering all of the factors and circumstances involved.

The statute pursuant to which the State brought this proceeding condemns the transportation of cigarettes without the required tax stamps upon the public highways, waterways or roads of this State, unless he has in his possession an invoice or delivery ticket showing: (a) the true name and address of the seller; (b) the true name of the purchaser; (c) the quantity and brand of the cigarettes transported; and (d) the name and address of the person who shall assume the payment of the state tax at the point of ultimate destination.

The defense argues that the evidence produced by the State falls short of that required to sustain a conviction and that a judgment of acquittal should have been entered. Obviously, the invoice in question fulfilled the requirements of paragraphs (a) and (c) as they are set forth above. However, they did not comply with the requirement outlined in paragraphs (b) and (d) above in that they did not contain the true name of the purchaser and the name and address of the person who was to assume the payment of the state tax at the point of ultimate destination.

█ The word "State," as used in the phrase "shall assume the payment of State tax at the point of ultimate destination," cannot be interpreted as being limited to the State of New Jersey but must be construed to apply to any state in the Union.

█ The defendant has challenged the validity of *N. J. S. A.* 54:40A–32 on several constitutional grounds. Initially, he contends that it is violative of the "commerce clause" of the United States Constitution. *Article* I, *Section* 8, *clause* 3 of the *United States Constitution* provides "The Congress shall have Power * * * to regulate Commerce with foreign Nations, and among the several States, and with the Indian tribes." The rule would seem to be that in the absence of controlling federal legislation, the State, in the exercise of its police powers, may regulate matters which, because of their local character, their number or diversity, have not been the subject of Congressional action, and this rule is applicable even though the regulation by the State burdens or in some measure restricts interstate commerce. *South Carolina State Highway Department v. Barnwell Bros.,* 303 *U. S.* 177, 625, 58 *S. Ct.* 510, 82 *L. Ed.* 734 (1938). Concededly, the State of New Jersey could not impose a tax on goods moving in interstate commerce. However, an examination of *N. J. S. A.* 54:40A–32 indicates that it is a regulatory measure and not enacted for the purpose of procuring tax revenues for the State. The statute is not designed to prohibit the transportation of cigarettes through the State if the packages of cigarettes do not contain the New Jersey tax stamps, but only requires that invoices or delivery tickets properly executed accompany the transportation of the cigarettes.

█ *Duckworth v. State of Arkansas,* 314 *U. S.* 390, 62 *S. Ct.* 311, 86 *L. Ed.* 294 (1941), presented a situation analogous to the one presented here. In that case the United States Supreme Court considered the effect of an Arkansas statute requiring a permit for transportation of intoxicating liquor passing through the State. As in the instant case, the question presented for determination was

whether the statute in its penal sanction unduly encroached upon the power of the United States Congress to enact legislation affecting interstate commerce. The Arkansas Supreme Court had ruled that the requirement of the permit was a local police regulation and valid under the commerce clause. Affirming the action of the Arkansas Supreme Court, Chief Justice Stone stated 314 *U. S.*, at *page* 393, 62 *S. Ct.*, at *page* 312:

"For we are of the opinion that upon principles of constitutional interpretations consistently accepted and followed by this Court ever since the decisions in *Willson v. Black-bird Creek Marsh Co.*, 2 *Pet.* 245, 7 *L. Ed.* 412 and *Cooley v. Board of Wardens*, 12 *How.* 299, 13 *L. Ed.* 996. The commerce clause does not foreclose the Arkansas regulation with which we are now concerned.

The commerce here is transportation alone, there being no question of sale or use within the State of regulation. We may therefore put to one side the cases in which local restrictions or prohibitions on sale or use of intoxicating liquor or other articles of commerce, unaided by Acts of Congress, have been deemed a prohibited burden on Interstate Commerce, see *Bowman v. Chicago & N. W. Ry. Co.*, *supra* [125 *U. S.* 465, 8 *S. Ct.* 689, 31 *L. Ed.* 700], *Leisy v. Hardin*, *supra* [135 *U. S.* 100, 10 *S. Ct.* 681, 34 *L. Ed.* 128]. The present scheme of regulation is narrower in operation and has a less restrictive effect upon the commerce. It does not forbid the traffic in liquor, nor does it impede it more than is reasonably necessary to inform the local authorities who is to effect the transportation through the state, and to afford opportunity for them to police it."

The defendant attempted to distinguish *Duckworth v. Arkansas, supra,* from the present case on the ground that the court was there concerned with intoxicating liquor, an item affected with the public interest, while the commodity with which we are here concerned does not fall within that same category. *Lane Distributors, Inc., v. Tilton, 7 N. J.* 349 (1951), would seem to establish that the cigarette business is one that is affected with the public interest and defeats that argument.

Lastly, the defendant charges that plaintiff's complaint is legally insufficient in that it failed to allege that the cigarettes in question were being transported upon the public highways, waterways, roads or streets of this State, and found

that the complaint did not allege that the defendant was not within the "common carrier" exemption contained within the statute pursuant to which complaints were drawn.

█ It is sufficient to say that the defendant certainly was given adequate notice of the nature of the violation with which he was charged and the specific enactment which made his acts an offense. *Board of Health of State of New Jersey v. Vandruens, 77 N. J. L. 443 (Sup. Ct. 1909).*

This court having made the foregoing conclusions, it is ordered that the defendant Leon Giroux shall be fined the sum of $2,685 plus costs, and that a judgment of acquittal be entered as to the defendant Leo Dubois.

It is further ordered that the cigarettes be confiscated in favor of the State of New Jersey.

It is further ordered that the vehicle as agreed by the parties, should be returned to the bank in Vermont who held a lien on it.