AARON K. NEELD, DIRECTOR, DIVISION OF TAXATION, STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. LEON GIROUX, DEFENDANT-APPELLANT, AND LEON DUBOIS, DEFENDANT.

Argued February 25, 1957—Decided May 6, 1957.

- *Mr. George Winne* argued the cause for appellant.

*Mr. John F. Crane* argued the cause for respondent (*Mr. Grover C. Richman, Jr.,* Attorney-General of New Jersey, attorney; *Mr. John F. Crane,* Deputy Attorney-General, of counsel).

The opinion of the court was delivered by

WEINTRAUB, J. Defendant Leon Giroux of Colebrook, N. H. purchased 154 cases of cigarettes from R. Baylin Company of Wilmington, Del. The transaction was consummated at Elkton, Md., by delivery of the merchandise in exchange for $15,186 in cash. While operating his truck through New Jersey, Giroux was stopped, and the cigarettes not bearing stamps required by our Cigarette Tax Act and he not having in his possession invoices complying with the act, the Director of the Division of Taxation filed two complaints in the municipal court of Milltown, one for a penalty and the other for the confiscation of the cigarettes as contraband. Judgments were entered in favor of plaintiff on both complaints, the penalty being in the sum of $2,685. The co-defendant Leon Dubois, who was with Giroux, was found not guilty.

Giroux appealed to the County Court where, on a trial *de novo* on the stenographic record made below, like judgments were entered. Giroux' appeal to the Appellate Division was certified by us on our own motion.

The Cigarette Tax Act, *chapter* 65 of the *Laws of* 1948, *N. J. S. A.* 54:40A–1 *et seq.*, provides in *section* 609 as amended, *N. J. S. A.* 54:40A–32, that

"Every person who shall transport cigarettes not stamped as required by this act upon the public highways, waterways, roads or streets of this State shall have in his actual possession invoices or delivery tickets for such cigarettes which shall show the true name and address of the consignor or seller, the true name of the consignee or purchaser, the quantity and brands of the cigarettes transported and the name and address of the person who has or shall assume the payment of the State tax at the point of ultimate destination, ＊ ＊ ＊"

and authorizes the confiscation of the cigarettes, vehicle, vessel, and paraphernalia as contraband and the imposition of a maximum penalty of $25 per carton in the absence of the required documents. It protects an innocent lienor with respect to the vehicle, and upon an appropriate finding Giroux' truck was turned over to a Vermont bank.

The invoices in Giroux' possession revealed the true name and address of the seller and the quantities and brands of the cigarettes, but were held to be insufficient in two respects: (1) they read "Sold to Leon c/o Magnesia Plant, Elkton, Md.," and although signed "Leon Giroux" at the place designated for "Customer's Signature," yet, as found below, it was Giroux' undisclosed principal who was the consignee or purchaser; and (2) they did not contain "the name and address of the person who has or shall assume the payment of the State tax at the point of ultimate destination." Giroux disputes the finding that he was acting for another and insists he was the true consignee or purchaser within the meaning of the act. We need not dwell upon this proposition, since for other reasons we conclude the judgments must be reversed.

 Plaintiff accepts the finding that the cigarettes were destined for Vermont and hence that no evasion of our tax was contemplated, but maintains that a violation of the cigarette tax law of Vermont was intended and that our statute denies the use of our highways for that illegal purpose.

Defendant disputes the constitutional power of New Jersey to restrain interstate transit to protect sister states. We do not reach the issue thus tendered since we think it clear that the Legislature concerned itself solely with our tax and evasions of it.

There is no reference in the title or body of the act to the violation of the laws of another state or the use of the highways for such purpose. Nor does the history of the particular section here involved support plaintiff's thesis; on the contrary, it reveals that the objective was to deal with violations of our statute alone.

As originally enacted, *N. J. S. A.* 54:40A–32 read:

"Every person who shall possess or transport any unstamped cigarettes upon the public highways, roads or streets of this State shall be required to have in his actual possession invoices or delivery tickets for such cigarettes. The absence of such invoices or delivery tickets shall be *prima facie* evidence that such person is a dealer in cigarettes in this State subject to all of the provisions and penalties provided for in this act."

It will be noted that the absence of the required documents was made *prima facie* evidence in terms related to enforcement of our statute. This section was amended by *chapter* 281 of the *Laws of* 1951, by *chapter* 246 of the *Laws of* 1952, and by *chapter* 225 of the *Laws of* 1954. The statement with the bill which became the 1952 law reads in part:

"It is likewise the purpose of these amendments to tighten the law with regard to the illegal smuggling of cigarettes into the State."

The statement with the bill which became the 1954 statute expressed the purpose "to vest in the courts the power of confiscation of contraband cigarettes, vehicles and vessels, and paraphernalia used in connection with contraband cigarettes." We read these statements to buttress the proposition that the Legislature was concerned solely with protecting the revenues of New Jersey.

Plaintiff urges alternatively that assuming the section is designed to protect only the New Jersey tax, yet the

Legislature may require a person transporting cigarettes through the State to carry appropriate documents to enable enforcement officers to guard against illegal diversion within the State, and may penalize the failure to comply notwithstanding the absence of a purpose to evade our tax. We do not doubt the power of the State so to provide. A state may protect its local interest by reasonable measures which do not unduly interfere with interstate commerce, in the absence of federal legislation occupying the area. *Carter v. Commonwealth of Virginia,* 321 *U. S.* 131, 64 *S. Ct.* 464, 88 *L. Ed.* 605 (1944); *Duckworth v. State of Arkansas,* 314 *U. S.* 390, 62 *S. Ct.* 311, 86 *L. Ed.* 294 (1941); *People v. Asta,* 337 *Mich.* 590, 60 *N. W. 2d* 472 *(Sup. Ct.* 1953); *People v. Locricchio,* 342 *Mich.* 210, 69 *N. W. 2d* 723 *(Sup. Ct.* 1955). In *Carter* the United States Supreme Court reaffirmed the proposition that "The State of transit may compel the carrier to furnish information necessary for checking the shipment against unlawful diversion, * * *." 321 *U. S.,* at *page* 135, 64 *S. Ct.,* at *page* 467, 88 *L. Ed.* 605.

The cigarette tax is an important source of state revenue. The opportunities for evasion are evident and evasion has been so widespread that the Congress enacted the Jenkins Act, 15 *U. S. C. A.* § 375 *et seq.* to assist the states in the collection of sales and use taxes on cigarettes. The Senate Report (1949 *U. S. Code Cong. Service, p.* 2159) found:

"The avoidance of State sales and uses taxes on cigarettes by interstate shipments to consumers in States taxing cigarettes is depriving the States of large amounts of sorely needed revenue. It is believed that this revenue loss to the States amounts to approximately $40,000,000 annually. Moreover, it is the general opinion of State tax administrators that the percentage of loss, as well as the aggregate loss, is steadily mounting throughout the 40 States that now impose cigarette taxes."

The authority of the Congress thus to lend its hand has been upheld. *Consumer Mail Order Association of America v. McGrath,* 94 *F. Supp.* 705 *(D. C. D. C.* 1950), affirmed 340 *U. S.* 925, 71 *S. Ct.* 500, 95 *L. Ed.* 668 (1951). The purpose was to assist rather than to foreclose state efforts

to protect state interests. *People v. Asta, supra* (60 *N. W. 2d*, at *page* 481).

The difficulty lies not in the want of power, but rather in the absence of an exercise of that power. The statute provides that the documents shall show "the name and address of the person who has or shall assume the payment of the State tax at the point of ultimate destination." The "State tax" can be only the New Jersey tax, and that tax is imposed "on the sale, use or possession for sale or use within this State. * * *" *N. J. S. A.* 54:40A–8. Hence, a fair reading would suggest to a carrier that the documents are required only if the cigarettes are intended for sale, use or possession for sale or use in New Jersey. A penal statute "is to be strictly construed and will not be held to create a liability when the words of the enactment are not clear in fixing it." *State v. Mundet Cork Corporation*, 8 *N. J.* 359, 365 (1952).

A number of considerations support this conclusion. As pointed out above, the legislative history of the section here involved reveals a purpose to strike at smuggling into the State. The heavy consequences of a violation, namely, the confiscation of the cigarettes, vehicle or vessel, and paraphernalia, plus a maximum penalty of $25 per carton suggest strongly that the Legislature had in mind an evasion of our tax. We should not easily assume that the Legislature intended to deal so severely with a failure to carry documents where there is no purpose to divert the cargo into local commerce. It is pertinent to add that *N. J. S. A.* 54:40A–30, which declares to be contraband unstamped cigarettes "found in any place in this State," empowers the director to return them upon satisfactory proof "that the owner thereof has not willfully or intentionally evaded any tax imposed by this act."

The judgments are accordingly reversed.

*For reversal*—Chief Justice VANDERBILT, and Justices HEHER, OLIPHANT, BURLING, JACOBS and WEINTRAUB—6.

*For affirmance*—None.