Dear Director Crisp,
The Attorney General is in receipt of your request for an opinion wherein you ask in effect the following questions:
 1. May an out of state beer wholesaler sell strong beer directly to a retail liquor store located on Fort Sill, a federal military reservation?
 2. Would an out of state beer wholesaler who sold strong beer to a retail liquor store located on Fort Sill be required to have a license from the Oklahoma Alcoholic Beverage Control Board?
 3. May an Oklahoma Class "B" Wholesaler transport strong beer from out of state to a retail liquor store located on Fort Sill and place strong beer in the retail liquor store as an agent of an out of state beer wholesaler?
 4. May an Oklahoma Class "B" Wholesaler store or warehouse strong beer that he receives from an out of state beer wholesaler in his Oklahoma warehouse; to be delivered to a retail package store located on Fort Sill at a later date?
The first issue presented by your questions is whether the Oklahoma Alcoholic Beverage Control Board may regulate alcoholic beverages within the confines of Fort Sill. The United States Supreme Court in Johnson v. Yellow Cab Transit Co., 321 U.S. 383, 88 L.Ed. 814, 64 S.Ct. 622 (1944) addressing the issue of what authority the State of Oklahoma had to control liquor transactions on the Fort Sill reservation, stated as follows:
 "With certain minor exceptions not here material, Oklahoma ceded to the United States in 1913 whatever authority it ever could have exercised in the Reservation.[1] The Oklahoma Supreme Court has recognized the general power to govern the Fort Sill area is vested in the United States, not in Oklahoma,[2]
and our decisions lead to the same conclusion.[3]
Clearly the State of Oklahoma has ceded exclusive jurisdiction of Fort Sill to the United States thereby divesting itself of the power to regulate alcoholic beverages on Fort Sill. Johnson v. Yellow Cab Transit Co., supra; 80 O.S. 4 (1971). Further, the Oklahoma Supreme Court has held that the effect of 80 O.S. 4 (1971) ceding military reservations to the United States was to place in abeyance the powers of the State Legislature to extend state laws to the reservation. McDonnell Murphy v. Lunday, 191 Okla. 611, 132 P.2d 322 (1942); Ottinger Bras v. Clark,191 Okla. 488, 131 P.2d 94 (1942). See also, Utley v. State Industrial Commission, 176 Okla. 257, 55 P.2d 764 (1936). A state generally may not regulate the importation of distilled spirits into territory over which the United States exercises exclusive jurisdiction. United States V. Tax Commission of Mississippi, 421 U.S. 599, 44 L.Ed.2d 404, 95 S.Ct. 1872
(1975); United States v. State Tax Commission of Mississippi,412 U.S. 363, 37 L.Ed.2d 1, 93 S.Ct. 2183 (1973); Johnson v. Yellow Cab Transit Company, supra; Collins v. Yosemite Park Curry Company,304 U.S. 518, 82 L.Ed. 1502, 58 S.Ct. 1009
(1938). The United States Supreme Court in United States v. State Tax Commission of Mississippi, supra, 37 L.Ed.2d 1, 11
referring to Collins v. Yosemite Park Curry Company, supra, stated:
 "Collins would seem to compel the conclusion that absent an appropriate express reservation — which is lacking here — the Twenty-first Amendment confers no power on a State to regulate — whether by licensing, taxation, or otherwise — the importation of distilled spirits into territory over which the United States exercises exclusive jurisdiction."
And, in an Oklahoma Attorney General's Opinion dated December 3, 1959, which dealt with state excise stamps on alcoholic beverages destined for military reservations in this State, then Attorney General Mac Q. Williamson stated in part as follows:
 "Thus it is apparent that spirits and wines purchased by Federal instrumentalities, such as Officers' Clubs and Non-Commissioned Officers' Clubs operating on Federal reservations, may be ordered from within or without the State, and may have unimpeded transportation, insofar as State excise tax stamps are concerned, to the proper destination, assuming same to be upon and within the limits of any military reservation in this State, jurisdiction over which has been ceded by legislative act to the United States." (Emphasis added).
Therefore, your first question must be answered in the positive. An out-of-state beer wholesaler, as far as the Oklahoma Alcoholic Beverage Control Board is concerned, may sell beer containing an excess of 3.2 percent alcohol by weight to a retail package store located within the confines of Fort Sill.
Accordingly, your second question is answered in the negative. The State of Oklahoma, through the Oklahoma Alcoholic Beverage Control Board, does not have the power or jurisdiction to require an out-of-state beer wholesaler to obtain a license so that he may sell alcoholic beverages to a retail liquor store located within the confines of Fort Sill. United States v. State Tax Commission of Mississippi, supra; Collins v. Yosemite Park Curry Company, supra.
Your remaining two questions involve transportation of alcoholic beverages through the State of Oklahoma and the storage of alcoholic beverages within the State of Oklahoma prior to delivery to Fort Sill, their ultimate destination.
In 1944, prior to the enactment of the Oklahoma Alcoholic Beverage Control Act which brought an end to Oklahoma prohibition, the United States Supreme Court in Johnson v. Yellow Cab Transit Company, supra, held that Oklahoma law making it unlawful "to import, bring, transport, or cause to be brought or transported into the State . . . intoxicating liquor . . . without a permit . . . as hereinafter provided", (37 O.S. 41 (1941)) did not apply to a shipment of 225 cases of wines and liquors originating in east St. Louis, Illinois and destined via Oklahoma City for the Fort Sill military reservation. The Supreme Court in its opinion observed that:
 "No permit to transport liquor into Oklahoma can be obtained at all except for scientific, mechanical, medicinal, industrial, or sacramental purposes." 37 O.S. 42 (1941).
The Supreme Court also conceded that were 37 O.S. 41 (1941) "intended to do no more than provide a means whereby the state could protect itself from illegal liquor diversions within the area which Oklahoma has power to govern . . .", their conclusions might well have been different.
While the United States Supreme Court in United States v. Tax Commission of Mississippi, supra, held that:
 ". . . absent an appropriate express reservation . . . the Twenty-first Amendment confers no power on a State to regulate — whether by licensing, taxation, or otherwise — the importation of distilled spirits into territory over which the United States exercises exclusive jurisdiction."
The Supreme Court in the same case went on to state as follows:
 "This is not to suggest that the State is without authority either to regulate liquor shipments destined for the bases while such shipments are passing through Mississippi or to regulate the transportation of liquor off the bases and into Mississippi for consumption there. Thus, while it may be true that the mere `shipment of liquor through a state is not transportation or importation into the state within the meaning of the Twenty-first Amendment,' Carter v. Virginia, 321 U.S. 131, 137, 88 L.Ed. 605, 64 S.Ct. 464 (1944), a State may, in the absence of conflicting federal regulation, properly exercise its police powers to regulate and control such shipments during their passage through its territory insofar as necessary to prevent the `unlawful diversion' of liquor `into the internal commerce of the State,' see Hostetter v. Idlewild Bon Voyage Liquor Corp., 377 US, at 333, 331 n 10, 12 L.Ed.2d 350; Carter v. Virginia, supra; Duckworth v. Arkansas, 314 U.S. 390, 86 L.Ed. 294, 62 S.Ct. 311, 138 ALR 1144 (1941)."
In 1959, subsequent to the decision in Johnson v. Yellow Cab Transit Company, supra, the State of Oklahoma adopted the Oklahoma Alcoholic Beverage Control Act. The Alcoholic Beverage Control Act provided in pertinent part via 37 O.S. 505 (1971) that:
 "No person shall . . . possess, store, import into or export from this state, transport, or deliver any alcoholic beverage except as specifically provided in this act . . . ."
Further, 37 O.S. 521 (1971) provides in part as follows:
 "(k) A carrier's license may be issued to any common carrier operating under a certificate of convenience and necessity issued by any duly authorized federal or state regulatory agency. Such license shall authorize the holder thereof to transport alcoholic beverages into, within, and out of this state under such terms, conditions, limitations, and restrictions as the Board may prescribe by order issuing such license and by regulations.
 "(1) A private carrier's license may be issued to any carrier other than a common carrier described in subsection (k) in this section. Such license shall authorize the holder thereof to transport alcoholic beverages into, within, or out of this state under such terms, conditions, limitations, and restrictions as the Board may prescribe by order issuing such license and by regulations. No carrier's license or private carrier's license shall be required of licensed brewers, distillers, winemakers, rectifiers, wholesalers, or Class B wholesalers, to transport alcoholic beverages from the place of purchase or acquisition to the licensed premises of such licensees and from such licensed premises to the licensed premises of the purchaser in vehicles owned or leased by such licensee when such transportation is for a lawful purpose and not for hire." (Emphasis added)
It is clear that a Class "B" Wholesale license does not give a Class "B" Wholesaler the privilege of transporting commercially alcoholic beverages for another person. If a Class "B" Wholesaler is to get any compensation for transporting another persons alcoholic beverages, he cannot do so under his Class "B" Wholesaler's license. The proper licenses for commercial transportation of alcoholic beverages are a "carrier's license" and a "private carrier's license." 37 O.S. 521 (1971). Should a Class "B" Wholesaler wish to transport alcoholic beverages and be in any way compensated for same, he would have to obtain one of these two licenses. It should be noted, however, that a Class "B" Wholesale license may not be renewed if the holder is also "the holder or partner of the holder of any other class license issued under the provisions of the Oklahoma Alcoholic Beverage Control Act, other than an employee license for the proposed license premises of applicant, or a storage license or a bonded warehouse license . . . ." 37 O.S. 527(a)(15) (1971).
Therefore, your third question must be answered as follows. A Class "B" Wholesaler may not transport strong beer from out of state to Fort Sill as an agent of an out-of-state beer wholesaler if, as an agent, he received compensation for such transportation. And further, a Class "B" Wholesaler who obtains either a carrier's or a private carrier's license may not retain his Class "B" Wholesale license.
Your fourth question centers around the storage or warehousing of alcoholic beverages in a Class "B" licensee's warehouse prior to their delivery to Fort Sill. From the context of your third question it is apparent that the contemplated warehousing is of alcoholic beverages not owned by the Class "B" wholesaler. The mere fact that a Class "B" wholesaler holds such a license does not imply that he is allowed to perform a warehousing service for persons outside the state who wish to transport alcoholic beverages through the state. A Class "B" wholesaler license authorizes the holder thereof pursuant to 37 O.S. 521(f) (1971) to do the following:
 "(f) A Class B wholesaler's license shall authorize the holder thereof to purchase and import into this state beer from persons authorized to sell same who are the holders of nonresident seller's licenses, and their agents who are the holders of manufacturers agent's licenses to purchase beer from licensed brewers and Class B wholesalers in this state; to sell in retail containers to retailers in this state beer which has been unloaded and stored at the holder's self-owned or leased and self-operated warehouse facilities for a period of at least twenty-four (24) hours before such sale; and to sell beer in this state to Class B wholesalers and out of this state to qualified persons, including federal instrumentalities and voluntary associations of military personnel on federal enclaves in this state over which this state has ceded jurisdiction."
As set out in 37 O.S. 505 (1971), "No person shall . . . store . . . or deliver any alcoholic beverage except as specifically provided" in the Alcoholic Beverage Control Act. Commercial storage of alcoholic beverages in Oklahoma is provided for in 37 O.S. 521(m) (1971) which provides for the issuance of a bonded warehouse license. However, the holder of a bonded warehouse license may only store alcoholic beverages for holders of storage licenses as set out in 37 O.S. 521(n) (1971). See also, 37 O.S. 521(m) (1971). Therefore, your fourth question must be answered as follows. An Oklahoma Class "B" wholesaler may not commercially or otherwise store alcoholic beverages that he does not own without first obtaining a bonded warehouse license pursuant to 37 O.S. 521(m) (1971). The issue of delivery of the beer to Fort Sill has been dealt with in the answer to your third question.
It is, therefore, the opinion of the Attorney General that yourquestions be answered as follows: An out-of-state beer wholesaler,insofar as the Oklahoma Alcoholic Beverage Control Board is concerned,may sell beer containing an excess of 3.2 percent alcohol by weight to aretail liquor store located within the confines of Fort Sill. And, theState of Oklahoma, through the Oklahoma Alcoholic Beverage ControlBoard, does not have the power or jurisdiction to require an out-of-statebeer wholesaler to obtain an Oklahoma Alcoholic Beverage Control licenseto sell alcoholic beverages to a retail liquor store located within theconfines of Fort Sill. A Class "B" Wholesaler may not transport strongbeer from out of state to Fort Sill as an agent of an out-of-state beerwholesaler if, as an agent, he receives compensation for suchtransportation. A Class "B" Wholesaler who obtains either a carrier's ora private carrier's license may not retain a Class "B" Wholesalelicense. An Oklahoma Class "B" Wholesaler may not commercially orotherwise store alcoholic beverages that he does not own without firstobtaining a bonded warehouse license pursuant to 37 O.S. 521(m) (1971).
JAN ERIC CARTWRIGHT, ATTORNEY GENERAL OF OKLAHOMA
DUANE N. RASMUSSEN, ASSISTANT ATTORNEY GENERAL
[1] Oklahoma Laws, 1913, c. 52, p. 90.
[2] See Utley v. State Industrial Commission, 176 Okla. 255, 55 P.2d 762; Re Reno Quartermaster Depot Military Reservation, 180 Okla. 274,68 P.2d 659.
[3] See Collins v. Yosemite Park Co. 304 U.S. 518, 82 L.Ed 1502, 1512,58 S.Ct. 1009; Pacific Coast Dairy v. Department of Agriculture,318 U.S. 285, 294 87 L.Ed 761, 766, 43 S.Ct. 628.